JUSTICE NELSON,
dissenting.
¶36 I respectfully dissent from the Court’s decision as to Issue 1. I would reverse and remand for a new trial on this issue and, therefore, would not address Issues 2 and 3.
¶37 It is well-settled that proving an ineffective assistance of counsel claim requires the defendant to show (1) that counsel’s performance was deficient, i.e., that it fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances, and (2) that counsel’s errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. Whitlow v. State, 2008 MT 140, ¶¶ 10, 20, 343 Mont. 90, 183 P.3d 861 (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). I first address the performance prong of this test.
¶38 The premise of the Court’s Opinion is that there may be “plausible” justifications for defense counsel’s failure to request the “view with distrust” instruction required by § 26-1-303(4), MCA, and that these supposed justifications should be fleshed out in postconviction proceedings. Opinion, ¶¶ 17, 22. Ordinarily, I would agree with this approach. In the present case, however, the record establishes that Green’s counsel rendered constitutionally ineffective assistance of counsel by failing to request the “view with distrust” instruction. Accordingly, under our caselaw, reversal is required.
¶39 Section 26-1-303(4), MCA, states that “[t]he jury is to be instructed by the court on all proper occasions that. . . the testimony of a person legally accountable for the acts of the accused ought to be viewed with distrust” (paragraph break omitted). On one hand, the Court speculates that Green’s counsel might not have requested this instruction because it would have been inconsistent with Green’s theory in the case, Opinion, ¶ 18, or with his asserted defense of *153 compulsion,[1] Opinion, ¶ 21, or because he did not want to cast doubt on the testimony of a potentially favorable witness, Opinion, ¶ 20. On the other hand, however, the Court acknowledges that counsel did, “[plotentially inconsistently,” request an accomplice-related instruction under § 46-16-213, MCA, which states that a person may not be found guilty of an offense on the testimony of one responsible or legally accountable for the same offense (here, the testimony of McDonald) “unless the testimony is corroborated by other evidence that in itself ... tends to connect the defendant with the commission of the offense.” Opinion, ¶ 21.
¶40 I submit that defense counsel’s action is more than just “potentially inconsistent.” It is illogical and even “implausible” to assume that counsel wanted the jury to be instructed that McDonald’s testimony must be corroborated by other evidence independently connecting Green to the crimes but did not want the jury to view McDonald’s testimony with distrust in the first place. Rather than having some tactical or even conscious purpose in mind, as the Court surmises, it is more likely that Green’s counsel was simply unaware of the requirement in § 26-1-303(4), MCA, and our caselaw, discussed below, that the “view with distrust” instruction must be given where the State’s case is grounded on accomplice testimony.[2]
¶41 The District Court’s instructions bear this out. First, the jurors were told in Instruction No. 4 that they were “the sole judges of the credibility, that is the believability, of all the witnesses testifying in this case, and of the weight, that is the importance, to be given their testimony.” Furthermore, the jurors were told that they were “not
*154 bound to decide any fact based upon the testimony of a larger number of witnesses whose testimony does not convince you against the testimony of a smaller number of witnesses (or against a presumption), or other evidence which does convince you.” Indeed, the jurors were told that “[t]he evidence presented by one witness whom you believe is sufficient for the proof of any fact in this case.” Thus, under Instruction No. 4, if the jurors believed McDonald, his testimony was sufficient to establish Green’s guilt of deliberate homicide by accountability.
¶42 Yet, under Instruction No. 17, the jurors were told that
[a] person may not be found guilty of an offense on the testimony of one responsible or legally accountable for the same offense unless the testimony is corroborated by other evidence that in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense.
Thus, under Instruction No. 17, McDonald’s testimony was insufficient to establish Green’s guilt. It had to be corroborated by other evidence tending to connect Green with the commission of the offense. In short, without the “view with distrust” instruction, the jurors were left with apparently conflicting instructions on whether McDonald’s testimony itself was sufficient to prove a fact at issue.
¶43 In this connection, the corroboration instruction presumes that there was an accomplice, while the “view with distrust” instruction requires the jury to view that person’s testimony with distrust. It is logical that a jury would consider the accomplice’s testimony and view it with distrust before even reaching the requirement of corroboration. That is why the accomplice’s testimony must be corroborated-because it is to be viewed with distrust by the jury in the first instance and because accomplice testimony (especially where, as here, codefendants cut deals with the State) is simply not reliable. If the jurors, as they are required, first view the accomplice’s testimony with distrust and then find that corroborative evidence is lacking or weak, then the State may well be unable to convince the jury of the accused’s guilt beyond a reasonable doubt. If the State’s case hangs on the credibility of the accomplice, then the State may be unable to convict if the jurors do not find the accomplice’s testimony credible.
¶44 Here, McDonald was an accomplice as a matter of law. McDonald and Green were both charged in connection with the Sirucek and Madplume homicides, and we have held that the State’s charging one person for the same crime for which the defendant is tried constitutes *155 an acknowledgement by the State that the person is an accomplice. State v. Johnson, 276 Mont. 447, 451-52, 918 P.2d 293, 295-96 (1996). Indeed, Green was charged as McDonald’s accomplice. McDonald admitted killing Sirucek and Madplume and testified against Green as part of his plea agreement with the State. The State’s case hinged to a great extent on McDonald’s testimony.
¶45 In State v. Rose, 1998 MT 342, 292 Mont. 350, 972 P.2d 321, on facts similar to those here, we observed that there was “no indication that counsel made a tactical decision not to request an instruction on accomplice testimony.” Rose, ¶ 18. We concluded that defense counsel had nothing to lose by asking for this instruction, and we reversed, holding that there was no reasonable tactical or strategic reason for failing to provide an instruction on the jury’s consideration of an accomplice’s testimony when the accomplice testifies that the accused came up with the idea for the crime and provided the tools with which to commit the offense. Rose, ¶ 18.
¶46 Likewise, in the case at bar, McDonald testified that Green came up with the idea for killing Sirucek and Madplume and that Green then provided McDonald with the means for doing so (the gun Green stole from his cousin). Gardipee’s testimony that Green was in the house at the time of the shootings was of dubious credibility, given his admissions on the witness stand that he had not been honest with the police and that he had given a conflicting account of the incident 12 hours after the shootings. Thus, McDonald’s credibility was critical to the State’s case, and Green’s defense hinged to a great extent on the jury not believing McDonald. Yet, Green’s counsel did not request the one instruction that would have required the jury to view McDonald’s testimony with distrust. The jury “should have been specifically instructed that it should view the testimony of [McDonald], an accomplice, with distrust.” Rose, ¶ 19.
¶47 In State v. Kougl, 2004 MT 243, 323 Mont. 6, 97 P.3d 1095, we followed our decision in Rose and found deficient performance by defense counsel because counsel failed to request the “view with distrust” instruction. Kougl, ¶ 21. Kougl had been charged with felony operation of an unlawful clandestine laboratory. As in the instant case, Kougl’s accomplices testified against him at trial as part of their plea agreements with the State. Kougl, ¶ 7. In closing argument, defense counsel pointed out to the jury that the testimony of the accomplices should be viewed with suspicion because of their criminal conduct and the deals two of them had cut with the State. Kougl, ¶ 9. Notwithstanding, defense counsel did not ask for the “view with *156 distrust” instruction under § 26-1-303(4), MCA. Kougl, ¶ 9. Consistently, defense counsel also did not request the corroboration instruction pursuant to § 46-16-213, MCA. Kougl, ¶ 9.
¶48 On appeal, Kougl raised an ineffective assistance of counsel claim, which we held was properly before us on direct appeal, as opposed to requiring him to raise it in a postconviction proceeding. Kougl, ¶ 22. We stated that “[generally, in addressing ineffective assistance of counsel claims, we ask ‘why’ counsel did or did not perform as alleged and then seek to answer the question by reference to the record.” Kougl, ¶ 14. We then explained that “[s]ometimes, however, it is unnecessary to ask ‘why’ in the first instance.” Kougl, ¶ 15. An example of this “is when counsel is faced with an obligatory, and therefore non-tactical, action. Then the question is not ‘why’ but ‘whether’ counsel acted, and if so, if counsel acted adequately.” Kougl, ¶ 15 (citation omitted). Another example, which is present here, “is the relatively rare situation where there is ‘no plausible justification’ for what defense counsel did.” Kougl, ¶ 15. We stated that “[wjhether the reasons for defense counsel’s actions are found in the record or not is irrelevant. What matters is that there could not be any legitimate reason for what counsel did.” Kougl, ¶ 15. We cited Rose as falling within this latter example, observing that defense counsel in Rose “had nothing to lose in asking for the [‘view with distrust’] instruction, and if counsel had asked for the instruction the trial court would have been obligated to grant the request.” Kougl, ¶ 17.
¶49 As with Rose, we observed that there was no reason for Kougl’s counsel not to ask for the “view with distrust” instruction, given that the parties had agreed that the “accomplices” were, in fact, accomplices and given that the State’s case against Kougl was based largely on the credibility of these witnesses. Kougl, ¶ 20. Indeed, we noted that counsel had “nothing to lose” in asking for this instruction, while Kougl, “however, risked losing his liberty.” Kougl, ¶ 21. We determined that “[b]y failing to ask the court to tell the jurors that the law demands they view the accomplices’ testimony with distrust, trial counsel failed to use the law to strike at the heart of the State’s case.” Kougl, ¶ 20. Thus, we concluded that we could rule on the merits of Kougl’s ineffective assistance of counsel claim without asking “why” counsel had not requested the instruction. Kougl, ¶ 22. It was enough that she had not, and we held that her performance was deficient. Kougl, ¶ 24.
¶50 These precedents are controlling here. In Rose, we held that defense counsel rendered ineffective assistance of counsel by failing to *157 request the “view with distrust” instruction. Rather than referring the case to a postconviction proceeding, we held on direct appeal that Rose’s defense was prejudiced. Rose, ¶¶ 19-20. Similarly, in Kougl, we held that Kougl’s ineffective assistance of counsel claim should be decided on direct appeal and that defense counsel rendered ineffective assistance of counsel by failing to request the “view with distrust” instruction. Kougl, ¶¶ 22, 24, 27.
¶51 Likewise here, by failing to request the “view with distrust” instruction required by § 26-1-303(4), MCA, defense counsel’s conduct fell below an objective standard of reasonableness measured under the prevailing professional norms established by our caselaw. Whitlow, ¶ 20. Counsel did not request the instruction although there was no plausible or legitimate justification for this course of action and although he had nothing to lose in asking the District Court to give it. McDonald was an accomplice as a matter of law; he testified against Green; and the State’s case against Green was based almost entirely, if not exclusively, on McDonald’s credibility as a witness. Therefore, as we determined in Rose and Kougl, Green’s counsel made errors so serious that he was not functioning as the “counsel” guaranteed Green by the Sixth and Fourteenth Amendments to the United States Constitution and Article II, Section 24 of the Montana Constitution. Whitlow, ¶ 10.
¶52 Turning, then, to the prejudice prong of the analysis, we stated in Rose that “[t]o support the prejudice element of a claim of ineffective assistance of counsel, a defendant need not demonstrate that he would have been found not guilty had his counsel taken different action”; rather, he “must establish only that there is a reasonable probability that but for counsel’s unprofessional errors the result of the proceeding would have been different.” Rose, ¶ 19 (citing Strickland, 466 U.S. at 694, 104 S. Ct. at 2068). In considering whether counsel’s failure to request the “view with distrust” instruction prejudiced Rose’s defense, we observed that “the distinction between what the jury was told and what it should have been told is significant.” Rose, ¶ 19. The jury had been instructed “only in general terms relative to the weight to be given the testimony of witnesses,” though it “should have been specifically instructed that it should view the testimony of [the accomplice] with distrust.” Rose, ¶ 19. We further observed that a “view with distrust” instruction “would have gone to the heart of the defense that [the accomplice] was not telling the truth when he said Rose was involved with him in the burglary.” Rose, ¶ 19. Having made these observations, we held that counsel’s failure to request the *158 instruction was prejudicial to Rose’s defense. Rose, ¶ 20.
¶53 Similarly, in Kougl, we determined that Kougl “established prejudice because the [‘view with distrust’ and corroboration] instructions would have conveyed to the jurors that the law commanded them to view the State’s crucial evidence with distrust such that there is a reasonable probability they would have arrived at a different outcome.” Kougl, ¶ 26. We noted that it is particularly important that the trial judge instruct the jurors in this regard, as opposed to the jurors hearing the law through argument by counsel. We explained that “what the judge tells the jury necessarily carries the force of law, while what the adversarial counsel tells the jury does not.” Kougl, ¶ 26. Moreover, written jury instructions may be “read, reread, and reflected] on while in deliberation.” Kougl, ¶ 26.
¶54 In the present case, the jury was instructed in general terms relative to the weight to be given the testimony of witnesses and was told that “[t]he evidence presented by one witness whom you believe is sufficient for the proof of any fact in this case.” The jury was also told, however, that McDonald’s testimony had to be corroborated in order to convict Green on the basis of that testimony, without any indication as to why such corroboration was necessary. The missing link was that McDonald’s testimony had to be “viewed with distrust” from the outset, which the jury should have been told. Section 26-1-303(4), MCA. A “view with distrust” instruction would have gone to the heart of the defense that McDonald was not telling the truth when he said that Green was involved with him in the shootings. Rose, ¶ 19. A “view with distrust” instruction would have conveyed to the jurors that the law commanded them to view the State’s crucial evidence with distrust. Kougl, ¶ 26. There is a reasonable probability, therefore, that but for counsel’s unprofessional errors, the result of Green’s trial would have been different. Rose, ¶ 19.
¶55 As we held in Rose and Kougl, therefore, I conclude that defense counsel’s failure to request the “view with distrust” instruction prejudiced Green’s defense and draws into question the reliability of the result of his trial. There are no substantive differences between the case at bar and the cases we decided in Rose and in Kougl. We should follow our precedent in this case.
¶56 Accordingly, I would reverse on Issue 1 and remand for a new trial. I respectfully dissent from our failure to do so.
JUSTICE COTTER joins the Dissent of JUSTICE NELSON.

 The Court states that Green’s compulsion defense “could be incompatible with the notion that Green was an ‘accomplice’ in the crimes, and could explain why [defense counsel] did not request the [‘view with distrust’] instruction.” Opinion, ¶ 21.1 disagree. As a matter of fact, this defense does not explain counsel’s action at all, since counsel withdrew the compulsion defense with respect to Counts I and II (the homicide charges) in the midst of settling jury instructions. See Reporter’s Transcript on Appeal at 12 (May 11,2006). As a result, the court, the prosecutor, and defense counsel then engaged in further discussion as to how the language of the compulsion instruction should be modified to reflect that it applied only to Count III (the tampering with evidence charge). See Transcript at 12-14. Assuming, arguendo, that defense counsel initially did not request the “view with distrust” instruction because it would have been incompatible with Green’s compulsion defense, that rationale was mooted once counsel withdrew this defense to Counts I and II. Yet, counsel did not then request the “view with distrust” instruction, which he should have done, as explained below.

 The placement of the “view with distrust” instruction in Title 26, as opposed to Title 46, of the MCA may be problematic for some inexperienced criminal defense counsel. That, however, does not absolve counsel from his or her obligation to research and request jury instructions appropriate to the defendant’s theory and defense.