No. 02-620

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 159

KENNETH DEXTER,

        Petitioner and Appellant,

    v.

JACK SHIELDS, Justice of the Peace
and JOHN DOE, Sheriff of Fergus County,

        Respondent and Respondent.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and for the County of Fergus, Cause No. DV 2002-31
The Honorable E. Wayne Phillips, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Gary E. Wilcox, Attorney at Law, Billings, Montana; Jeffrey G. Michael,
Attorney at Law, Billings, Montana

        For Respondent:

            Honorable Mike McGrath, Montana Attorney General, Pamela P. Collins,
Assistant Attorney General, Helena, Montana; Thomas P. Meissner, Fergus
County Attorney, Lewistown, Montana

Submitted on Briefs: April 3, 2003

Decided: June 22, 2004

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Kenneth Dexter (Dexter) was sentenced to one year in jail for third offense DUI. His sentence was suspended upon condition that he serve ninety days and pay a fine. He failed to do either. Approximately three years later, he was arrested on an outstanding warrant issued after his suspended sentence had expired. Presiding Justice of the Peace Jack Shields (Shields) invoked his contempt of court powers and sentenced Dexter to jail for failing to fulfill the conditions of his suspended sentence. Dexter filed an application for a Writ of Habeas Corpus in the Montana Tenth Judicial District Court, Fergus County. The District Court released Dexter pending a hearing on his application. The District Court subsequently concluded, however, that Shields had the authority to find Dexter in contempt of court and to punish Dexter accordingly. Dexter appeals. We reverse.

## ISSUE

¶2 The restated issue in this case is whether the District Court erred in upholding Shields' use of his contempt power against Dexter.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In late 1997, Dexter was charged with, among other things, third offense DUI. He pleaded guilty to all charges and, on April 9, 1998, Shields sentenced him to one year in jail. His sentence was suspended on the condition that he serve ninety days in jail and pay a $770 fine. The Order allowed Dexter to serve his ninety days over time providing he initially serve ten consecutive days and subsequently serve at least ten days per month. Dexter served his initial ten days but failed to report to serve any of the remaining eighty days.

2

Moreover, he paid none of the $770 fine. Dexter's suspended sentence expired on April 9, 1999.

¶4 At the time Shields imposed Dexter's sentence, he also sent a memorandum to the Fergus County Sheriff's Department instructing the Department to notify Shields by April 9, 1999, of the number of days Dexter served. On November 8, 1998, Shields issued a Bench Warrant for Dexter's arrest for non-payment of fines and failure to comply with the sentence of the court. Subsequently, Shields issued letters to Dexter in April, August, and October 1999, advising him of the balance due on his fines. In September 1999, Shields issued another Bench Warrant for non-payment and failure to comply with the sentence of the court. In September 2000, Shields sent another letter to Dexter informing Dexter that he needed to serve four more days on his second offense DUI and needed to "start doing ten days jail each month and enroll in and complete the Act Program" as originally sentenced. Finally, in April 2001, Shields issued another Bench Warrant for Dexter on the grounds that Dexter had failed to comply with his sentence.

¶5 On January 23, 2002, Dexter was arrested on the April 2001 warrant and incarcerated. He filed an Application for Writ of Habeas Corpus in the Montana Tenth Judicial District Court, Fergus County. The Application was granted and after an initial hearing, Dexter was released on his own recognizance on March 29, 2002. By the time of his release, Dexter had served approximately seventy-five days of his original ninety day sentence.

¶6     The parties briefed the relevant issues on Order of the District Court and a hearing on the merits was held on July 26, 2002. In August 2002, the District Court issued its Order on Writ of Habeas Corpus concluding that Shields was "within his judicial authority to enforce compliance of his lawful Sentencing Order. If Justice Shields conducts the mandatory hearing under § 3-1-518, MCA, he may initiate further compliance or incarceration under that action." Dexter appeals.

## STANDARD OF REVIEW

¶7     The District Court concluded as a matter of law that Shields was authorized to invoke his contempt of court powers to enforce the conditions of Dexter's expired suspended sentence. We review a district court's conclusions of law to determine whether its interpretation of the law is correct. *State v. Kennedy*, 2004 MT 53, ¶ 13, 320 Mont. 161, ¶ 13, 85 P.3d 1279, ¶ 13, (citation omitted).

## DISCUSSION

¶8     First, we acknowledge and agree with Shields' assertion that because the denial of a petition for writ of habeas corpus in a criminal proceeding is not *res judicata*, it is not appealable. *Morrison v. Mahoney*, 2002 MT 21, ¶ 8, 308 Mont. 196, ¶ 8, 41 P.3d 320, ¶ 8. However, as also recognized by Shields, in the interest of judicial economy, we may treat a writ denied by a district court as an original writ of habeas corpus before this Court. *Morrison*, ¶ 9. We choose to do so in this case.

¶9     Because we resolve this case on other grounds, the arguments presented to the District Court are of limited value and will not be presented in detail.

4

¶10     Dexter concedes that he failed to comply with the terms of his original sentence but argues that the County's recourse for such failure was to seek revocation of his suspended sentence. He asserts, and Shields agrees, that under § 46-18-203, MCA (2001), the county attorney could have filed a revocation petition at any time during the term of his suspended sentence. Dexter maintains that upon expiration of his suspended sentence on April 9, 1999, the Justice Court and Shields lost jurisdiction over his criminal case and over him personally. Citing *State v. Voegele* (1990), 243 Mont. 222, 793 P.2d 832, Dexter asserts that without jurisdiction Shields cannot bring contempt of court charges against him.

¶11     It is undisputed that the Fergus County Attorney's Office never filed a petition to revoke Dexter's suspended sentence. Shields argues, however, that under the 2001 contempt statutes, he had an alternative to revocation, and that under these statutes he properly exercised his contempt of court powers to enforce compliance with Dexter's original sentence. He maintains that because he was not seeking to revoke Dexter's suspended sentence but rather to force Dexter's compliance with that portion of Dexter's sentence that was **not** suspended, he can do so at any time through his contempt powers. Shields and the District Court relied upon the following contempt statutes: Sections 3-1-501, -512, -513, -518, -520, and 3-10-402, MCA (2001).

¶12     Shields further asserts that, unlike § 46-18-203, MCA, which contains a requirement that a revocation petition be filed within a specific period of time, his authority to bring contempt proceedings under § 3-10-401, MCA, has no such statutory time limit. The District Court agreed with Shields.

5

¶13     The parties in this case relied upon the contempt statutes in effect at the time Shields charged Dexter with contempt and initiated the contempt proceeding against Dexter.  It is axiomatic that when deciding a case involving the commission of a crime or sentencing for a crime, we use the criminal statutes in effect at the time of the commission.  *State v. Muhammad*, 2002 MT 47, ¶ 24, 309 Mont. 1, ¶ 24, 43 P.3d 318, ¶ 24.  We conclude that because Dexter's contempt could have occurred only during the term of his sentence--between April 9, 1998, and April 9, 1999--the contempt statutes in effect at that time are applicable.  As a result, and without deciding whether Shields, under the current statutes, properly exercised his contempt of court powers to compel Dexter's compliance, we will determine whether such an action was authorized under the statutes in effect at the time of the alleged contempt.

¶14     The District Court noted that § 3-1-519, MCA, was repealed in 2001.  The court therefore declined to apply that statute to the case at bar.  We conclude, based on the foregoing, that this was error.  Because § 3-1-519, MCA, was in effect during 1998 and 1999, it governs in this case.

¶15     Section 3-1-519, MCA (1997), provided that a court or judge had the authority to determine whether a person was in contempt of court and upon such a finding, the court or judge could fine such person up to $500 and/or imprison such person for a period of no more than five days.  By virtue of the established penalties listed in § 3-1-519, MCA (1997), contempt of court constitutes a misdemeanor crime.  "A person found guilty of contempt commits a misdemeanor, as exemplified by section 3-1-519, MCA, which imposes up to a

6

$500 fine and/or a five day jail sentence upon a person found guilty of contempt. Section 45-1-205(2)(b) provides, 'A prosecution for a misdemeanor must be commenced within 1 year after it is committed.'" *Milanovich v. Milanovich,* (1982), 201 Mont. 332, 334, 655 P.2d 963, 964.

¶16    In *Milanovich*, a divorced father failed to comply with a court order involving visitation for Christmas holidays in 1979. His former wife did not file her motion for contempt until August 1981. This Court concluded, based upon §§ 3-1-519 and 45-1-205(2)(b), MCA, that the one-year statute of limitations on a contempt charge had run, and that the district court was therefore without jurisdiction to hold the father in contempt for this court order violation. The same analysis is applicable in the case at bar. Dexter was originally ordered on April 9, 1998, to serve an initial ten days in jail, then ten days per month until the remaining eighty days was served. He was also ordered to pay a minimum amount toward his fine on a monthly basis. Given these conditions, Dexter was in contempt of court each month he failed to serve ten days or pay his fine. However, the last date on which he could have committed contempt was the date his sentence expired, April 9, 1999.

¶17    As noted above, the County had available to it during the term of Dexter's sentence, the power to seek revocation of Dexter's suspended sentence for Dexter's failure to comply with the conditions imposed by the court. For reasons we do not know, no revocation petition was ever filed. Rather, the court exercised its contempt authority to punish Dexter well after his sentence had expired. While we do not condone this practice, we decline to answer the question of whether contempt of court proceedings are a proper vehicle for

7

addressing a defendant's failure to fulfill the conditions of a criminal sentence, because such action, even if appropriate, was time-barred in this case. A contempt prosecution stemming from Dexter's failure to comply with the terms of his sentence would have to have been commenced by April 9, 2000, or within one year of the expiration of Dexter's suspended sentence. Such prosecution did not commence until after Dexter was arrested on January 23, 2002. Shields was clearly without jurisdiction at that point to hold Dexter in contempt for failing to comply with the terms of a sentence that expired in April 1999. *Milanovich*, 207 Mont. at 332, 655 P.2d at 964.

¶18    Because the Justice of the Peace lacked the jurisdiction to hold Dexter in contempt, the District Court's Order upholding the Justice Court's decision was incorrect.

**CONCLUSION**

¶19    For the foregoing reasons, we reverse the District Court's Order on Writ of Habeas

Corpus.


/S/ PATRICIA O. COTTER


We Concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER

Justice Jim Rice dissenting.

¶20 I respectfully dissent.

¶21 The Court states that Dexter's one-year jail sentence "was suspended upon condition that he serve ninety days and pay a fine," but, actually, only nine months of Dexter's one-year sentence (one year less 90 days) was suspended. The 90-day jail sentence was mandatory. Likewise, the various fines imposed were stand-alone, requisite provisions. The sentencing order clearly provided that only the "suspended portion of the Defendant's sentence is conditional upon compliance with all terms of this Order." Thus, although the State did not act to revoke the *suspended* portion of Dexter's sentence, that had no effect on the "unsuspended," or mandatory, provisions of the sentence. These provisions did not expire at the end of Dexter's period of suspension, because they were not fulfilled:

> Unless death or legal authority intervenes, a sentence of imprisonment is satisfied only by actual imprisonment. Therefore, if the time of sentence elapses without imprisonment, the sentence is still valid, subsisting, and unexecuted.

21A Am.Jur.2d *Criminal Law* § 822 (1998). This general principle undergirds our statutes, which provide that a sentence of imprisonment needs nothing more to be executed:

> When a judgment of imprisonment is entered [by the justice court], a certified copy thereof must be delivered to the sheriff or other officer, which is *sufficient warrant for its execution.*

Section 46-17-302(2), MCA (1997). Further, the imposition of an unconditional fine in a sentence can be enforced by imprisonment until the fine is paid, at the rate of $25 per day. Section 46-17-302(4), MCA (1997). In contrast, payment of restitution is a *condition* of

10

sentence, § 46-18-201(2) and (3), MCA (1997), and a defendant may be incarcerated for failure to pay restitution only after a hearing to determine the cause of the defendant's default. Section 46-18-247, MCA (1997).

¶22 The logic of these principles is clearly seen. If the mandatory portions of a sentence expired at the end of a sentence term, a defendant would need only to elude authorities until his term had expired in order to avoid the judgment.

¶23 The District Court held that the Justice Court properly exercised its contempt powers to enforce the judgment. However, it was not necessary for the Justice Court to invoke its contempt powers to enforce the judgment, which remained in effect and unexecuted. Therefore, I would affirm the judgment on the grounds that the District Court reached the correct conclusion, albeit for the wrong reason.


/S/ JIM RICE



Chief Justice Karla M. Gray joins the dissent of Justice Rice.


/S/ KARLA M. GRAY