No. 03-503

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 243

STATE OF MONTANA,

Plaintiff and Respondent,

v.

MARK ROBERT KOUGL,

Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADC 2002-297-3,
Honorable Thomas M. McKittrick, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, Helena, Montana
Missoula, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Micheal S.
Wellenstein, Assistant Attorney General, Helena, Montana

Brant S. Light, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  June 29, 2004

Decided:  September 8,
2004

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Mark Robert Kougl appeals from a conviction of Operation of Unlawful Clandestine Laboratory. We reverse.

¶2     We restate the issues on appeal as:

¶3     Is Kougl's ineffective assistance of counsel claim properly before us on direct appeal, or is a postconviction proceeding the proper forum?

¶4     Whether Kougl's trial counsel provided ineffective assistance because she failed to request jury instructions regarding accomplice testimony.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     On July 17, 2002, Kougl was arrested at the scene of a methamphetamine lab in Great Falls. The lab was the home of Colt Loney and Susan Fassler. Other individuals were also present, including James Pool. Cascade County Sheriff's Detective Dan Kohm and another officer arrived at the home to present a forgery arrest warrant to Fassler. After obtaining permission to enter the home, Detective Kohm observed many items consistent with the operation of a methamphetamine lab. After receiving written consent from Fassler, Kohm found more suspicious items, all of which he knew were used in the production of methamphetamine. Later, after obtaining a search warrant, officers discovered a plethora of additional materials used in the making of methamphetamine.

¶6     In conducting a protective sweep of the premises, the officers found Kougl in Loney and Fassler's bedroom. He was lying on the bed and displayed tell-tale signs of methamphetamine use, including sweating, anxiety, and facial distortions. Beside him on a night

2

stand was a decorative tin containing a bag of white powder. Between the night stand and the bed was a bag containing baggies of white powder and beige powder. Later tests established that both sets of white powder were a mix of guaifenesin and ephedrine or pseudoephedrine, and that the beige powder was methamphetamine. Ephedrine, or pseudoephedrine, is a necessary ingredient in the making of methamphetamine. Kougl was then taken outside and arrested. He asked to speak to a detective and then stated that he was at the home to learn how to cook methamphetamine and that Loney and another one of the suspects on the scene, Buddy Komeotis, were going to cook the methamphetamine and had gathered all the ingredients.

¶7    Kougl was subsequently charged with the felony offense of Operation of Unlawful Clandestine Laboratory. At trial Loney, Pool, and Fassler all testified against Kougl. Loney and Pool agreed to do so as part of their plea bargain agreements. Loney agreed to testify and to plead guilty to the same charge as Kougl in exchange for the State recommending a ten-year sentence with six years suspended. In addition, the State agreed not to bring a felony possession charge, a misdemeanor drug charge, and an assault charge against him. Pool agreed to testify and to plead guilty to possession of misdemeanor drug paraphernalia. In exchange, the State promised to recommend that the maximum sentence of six months be suspended, and, more importantly, that it would not charge Pool with Operation of Unlawful Clandestine Laboratory, again, the charge brought against Kougl. Given Pool's criminal history, he could have received up to one hundred years in Montana State Prison for that

3

charge. Fassler plea bargained with the State, but it does not appear that she received any benefit from the State for testifying against Kougl.

¶8    The prosecution's case was largely based on the testimony of Loney, Pool, and Fassler. Apart from Kougl's presence on the scene of the methamphetamine lab–and his obvious recent use of methamphetamine at the time of his arrest, his statement that he was there to learn how to manufacture methamphetamine, and perhaps the presence of the tin beside him in Loney and Fassler's bedroom, the accomplice testimony was the only other evidence connecting Kougl with the operation of the lab. Loney stated that Kougl had traded the needed ephedrine for methamphetamine. He also testified that he later gave the ephedrine to Fassler which he said she then placed in a tin. This testimony was partially weakened by a confidential informant who told the authorities before the arrests that another person had provided Loney with four ounces of ephedrine. In doing so the informant did not name Kougl. In the case of Pool, he stated that Kougl told him he had ephedrine. Pool also denied he was involved in the lab, but the credibility of this contention was seriously undermined by the testimony of the police and of Loney. In the case of Fassler, she testified that she heard Kougl say he would deliver the ephedrine needed to make methamphetamine. However, she also testified that she did not remember placing the ephedrine in the tin.

¶9    In making their closing arguments, both the prosecution and the state-appointed defense counsel pointed out to the jury that the testimony of the accomplices should be viewed with suspicion because of their criminal conduct and the deals Loney and Pool cut with the State. Defense counsel did not, however, ask the court to instruct the jury that under

4

§ 26-1-303(4), MCA, the testimony of persons such as the accomplices–that is, those who are legally accountable for the defendant's conduct–ought to be viewed with distrust, or that under § 46-16-213, MCA, the accomplice testimony must be corroborated. The jury returned a verdict of guilty.

¶10 Subsequently, Kougl's trial counsel withdrew and Kougl appealed his conviction claiming his right to effective assistance of counsel, as guaranteed by the Sixth Amendment to the United States Constitution, and Article II, Section 24 of the Montana Constitution, was violated by his attorney's failure to ask for instructions on accomplice testimony. The State rejects this contention and furthermore argues that the proper forum for the claim is not a direct appeal but a postconviction proceeding.

## STANDARD OF REVIEW

¶11 The right to effective assistance of counsel is guaranteed by the Sixth Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, and by Article II, Section 24 of the Montana Constitution. This Court has adopted the two-pronged test of *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, in judging ineffective assistance of counsel claims. *Sellner v. State*, 2004 MT 205, 322 Mont. 310, 95 P.3d 708. The defendant must demonstrate that (1) "counsel's performance was deficient or fell below an objective standard of reasonableness," *State v. Turnsplenty*, 2003 MT 159, ¶ 14, 316 Mont. 275, ¶ 14, 70 P.3d 1234, ¶ 14 (citing *State v. St. John,* 2001 MT 1, ¶ 37, 304 Mont. 47, ¶ 37 15 P.3d 970, ¶ 37); and (2) "establish prejudice by demonstrating that there was a reasonable probability that, but for counsel's errors, the result of the

proceeding would have been different." *Turnsplenty*, ¶ 14 (citing *State v. Harris*, 2001 MT 231, ¶ 19, 306 Mont. 525, ¶ 19, 36 P.3d 372, ¶ 19). The first prong carries a strong presumption in favor of the State, as counsel is allowed wide latitude in deciding what tactics she should, and should not, employ in defending her client. *See State v. Jefferson*, 2003 MT 90, ¶ 48, 315 Mont. 146, ¶ 48, 69 P.3d 641, ¶ 48.

¶12 Claims of ineffective assistance of counsel are mixed questions of law and fact. *State v. Herrman*, 2003 MT 149, ¶ 18, 316 Mont. 198, ¶ 18, 70 P.3d 738, ¶ 18; *State v. Turner*, 2000 MT 270, ¶ 47, 302 Mont. 69, ¶ 47, 12 P.3d 934, ¶ 47; *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070, 80 L.Ed.2d at 700 (stating that both prongs of the test are mixed questions of law and fact). Therefore, our review is *de novo*. *Herrman*, ¶ 18; *Turner*, ¶ 47.

## DISCUSSION

### ISSUE ONE

¶13 *Is Kougl's ineffective assistance of counsel claim properly before us on direct appeal, or is a postconviction proceeding the proper forum?*

¶14 Before ruling on whether Kougl has satisfied the two prongs of *Strickland* we must first determine if this direct appeal is even the proper forum in which to do so. Generally, in addressing ineffective assistance of counsel claims, we ask "why" counsel did or did not perform as alleged and then seek to answer the question by reference to the record. *State v. White*, 2001 MT 149, ¶ 20, 306 Mont. 58, ¶ 20, 30 P.3d 340, ¶ 20. If the record on appeal explains "why," we will then address the issue on appeal. If, as is usually the case, the claim is based on matters outside the record on appeal, we will refuse to address the issue on

6

appeal and allow the defendant to file a postconviction proceeding where he/she can develop a record as to "why" counsel acted as alleged, thus allowing the court to determine whether counsel's performance was ineffective or merely a tactical decision.

¶15    Sometimes, however, it is unnecessary to ask "why" in the first instance. An example of this is when counsel is faced with an obligatory, and therefore non-tactical, action. *See Hans v. State* (1997), 283 Mont. 379, 392, 942 P.2d 674, 682. Then the question is not "why" but "whether" counsel acted, and if so, if counsel acted adequately. The answer may or may not be in the record. Another example, present here, is the relatively rare situation where there is "no plausible justification" for what defense counsel did. *See Jefferson*, ¶ 50. This can occur even in situations, such as those listed in *White*, that generally rely on non-record material. *See White*, ¶¶ 18-19 (listing, *inter alia*, "the failure to fully inform a defendant of the consequences of his various options and rights" and "[t]he failure of counsel to offer a particular jury instruction" as examples of claims that are generally non-record based). Whether the reasons for defense counsel's actions are found in the record or not is irrelevant. What matters is that there could not be any legitimate reason for what counsel did.

¶16    *Jefferson* is an example of an exception to the need to ask "why." In that case, the defendant withdrew a guilty plea to a felony assault charge. *Jefferson*, ¶ 50. By doing this he indicated that he wished to seek an acquittal. *Jefferson*, ¶ 50. The defendant was subsequently tried for the more serious charge of attempted homicide. In his remarks to the jury, defense counsel admitted that the defendant was guilty of felony assault. *Jefferson*,

¶ 46. This statement completely undermined defendant's attempt to obtain a complete acquittal on all charges. *Jefferson*, ¶ 50. We found that there was "no plausible justification for counsel's conduct under these circumstances." *Jefferson*, ¶ 50.

¶17 This was also the case in *State v. Rose*, 1998 MT 342, 292 Mont. 350, 972 P.2d 321. *Rose* involved the same issue as presented here–whether defense counsel's failure to ask that the jury be instructed to view an accomplice's testimony with suspicion constituted ineffective assistance of counsel. *Rose*, ¶ 11. This Court held that it did. *Rose*, ¶ 20. Defense counsel had nothing to lose in asking for the instruction, and if counsel had asked for the instruction the trial court would have been obligated to grant the request. *See Rose*, ¶ 18; *see also* § 26-1-303(4), MCA (stating that in proper situations the court must instruct the jury to view accomplice testimony with suspicion); *State v. Johnson* (1993), 257 Mont. 157, 163, 848 P.2d 496, 499.

¶18 In contrast to *Rose*, in *Johnson* there was a record-based justification for not asking for an instruction on accomplice testimony. Johnson claimed that he was not at the scene of the crime, and asking the jury to view his accuser as an "accomplice" would contradict this defense. *Johnson*, 257 Mont. at 163, 848 P.2d at 499. Therefore, there was a tactical reason for not asking for the jury instruction. It was proper for this Court to ask "why" and then answer that question from the record.

¶19 Unlike the above cases, in *White* the reasoning of defendant's counsel was unclear, and may have been either tactical or due to deficient representation. *White*, ¶ 30. Similarly, in *State v. Herrman*, the reasons for not challenging juror selections were unclear because

there are a multitude of outside factors that may influence when an attorney challenges or does not challenge the selection of a juror. *Herrman*, ¶ 29. Thus, in *White* and *Herrman*, given the existence of a "plausible" (but not necessarily "actual") justification, the proper action for this Court was to dismiss the appeal without prejudice and allow the defendant to seek relief through a postconviction hearing. *Herrman*, ¶ 34; *White*, ¶¶ 30-31. In a case such as *Jefferson* "why" is not even asked because no plausible justification exists. In a case such as *Johnson* "why" (or "whether") is asked and is answerable from the record. In a case such as *White* "why" (or "whether") is asked and is not answerable from the record. A decision on the merits is called for in the first two cases, while dismissal without prejudice, leaving open the opportunity for a postconviction proceeding, is called for in the third.

¶20 The instant case falls into the first category. Just as in *Rose*, there was no reason for Kougl's trial counsel to not ask for an instruction to view his accomplices' testimony with suspicion. Section 26-1-303(4), MCA, demands that "[t]he jury is to be instructed by the court on all proper occasions that . . . the testimony of a person legally accountable for the acts of the accused ought to be viewed with distrust." The parties are agreed that Loney, Pool, and Fassler were accomplices. Since the status of all three is not in dispute, all three are accomplices as a matter of law. *State v. Johnson* (1996), 276 Mont. 447, 451-53, 918 P.2d 293, 295-96. Thus, if the trial court had been asked to give a "viewed with distrust" instruction to the jury, it would have had to honor the request. The State's case against Kougl was largely based on the credibility of the three accomplices. By failing to ask the

court to tell the jurors that the law demands they view the accomplices' testimony with distrust, trial counsel failed to use the law to strike at the heart of the State's case.

¶21 Not only did Kougl's trial counsel not ask for an instruction demanding that the jury view his accomplices' testimony with distrust, but she did not ask for an instruction that such testimony must be corroborated. Section 46-16-213, MCA, requires that accomplice testimony be corroborated by "other evidence" that, even without the accomplice testimony, still "tends to connect the defendant with the commission of the offense." The corroborating evidence need not be robust in such a situation, but it "'must raise more than a suspicion of the defendant's involvement in, or opportunity to commit, the crime charged.'" *State v. Black*, 2003 MT 376, ¶ 24, 319 Mont. 154, ¶ 24, 82 P.3d 926, ¶ 24 (quoting *State v. Kemp* (1979), 182 Mont. 383, 387, 597 P.2d 96, 99). There was very little corroborating evidence presented at trial. The fact that Kougl was on the scene of the methamphetamine lab, that he was high, that he said he was there to learn how to manufacture methamphetamine (but not that he had acquired any of the necessary materials), and that there was a tin with ephedrine in it could be viewed as corroborating. We take no view as to whether this would have been sufficient to corroborate the accomplices' testimony, but merely state that there was no plausible justification for failing to ask for an instruction regarding the need for corroboration. Trial counsel had nothing to lose in asking for both of these instructions. Her client, however, risked losing his liberty.

¶22 Therefore, we need not ask "why" counsel failed to request these instructions but may rule on the merits of Kougl's ineffective assistance of counsel claim in this direct appeal.

10

**ISSUE TWO**

¶23    *Whether Kougl's trial counsel provided ineffective assistance because she failed to ask for jury instructions regarding accomplice testimony.*

¶24    Since Kougl's trial counsel could have no plausible explanation for not asking for instructions on accomplice testimony, her performance was deficient and the first prong of *Strickland* is satisfied.  *See Rose*,  ¶ 18.

¶25    As stated above, prong two of the *Strickland* test requires that the defendant "establish prejudice by demonstrating that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."  *Turnsplenty*, ¶ 14.  "'A reasonable probability is a probability sufficient to undermine confidence in the outcome,' but it does not require that a defendant demonstrate that he would have been acquitted." *State v. Rogers*, 2001 MT 165, ¶ 14, 306 Mont. 130, ¶ 14, 32 P.3d 724, ¶14 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698).

¶26    It is the duty of the court to instruct the jury on the law. *Billings Leasing Co. v. Payne* (1978), 176 Mont. 217, 224-25, 577 P.2d 386, 390-91.  In both the criminal and civil contexts "[t]hat duty cannot be delegated to counsel." *Billings Leasing Co.*, 176 Mont. at 225, 577 P.2d at 391.  This is because what the judge tells the jury necessarily carries the force of law, while what the adversarial counsel tells the jury does not.  As the Seventh Circuit has noted in the fair trial context,

> [C]losing arguments are not evidence, neither do they substitute for proper jury instructions.  . . .  Had the jury been properly focused, via proper instructions, on the legal distinctions between a conspiracy to distribute marijuana and a mere buyer-seller relationship, the jury may well have found

12

> a buyer-seller relationship in this case. The failure to properly instruct the jury therefore denied the defendant a fair trial on Count 1.

*United States v. Pedigo* (7th Cir. 1993), 12 F.3d 618, 626. The State argues that the jury was already on notice of the need for suspicion and corroboration in regards to the accomplices' testimony. Indeed, the prosecution told the jury in its closing statements that the accomplices' testimony should not be trusted at face value, and that there was a need to corroborate their statements. But, as just stated, hearing this from counsel, whether the State's or defendant's, is not the same as hearing it from the court. This is especially true when it comes in the form of written jury instructions that the jury may read, reread, and reflect on while in deliberation. In this case, the jurors *were* instructed by the court that they must assess Kougl's guilt "based upon the evidence and the law *as stated in my instructions*." (Emphasis added.) If the jurors had received instructions on accomplice testimony they would have been told by the court, and not by mere advocates, that they must view the evidence in a way that "would have gone to the heart of the defense that [the accomplices were] not telling the truth" regarding Kougl's involvement in the methamphetamine lab. *Rose*, ¶ 19. Thus, Kougl has established prejudice because the instructions would have conveyed to the jurors that the law commanded them to view the State's crucial evidence with distrust such that there is a reasonable probability they would have arrived at a different outcome.

¶27 Therefore, both prongs of the *Strickland* test are satisfied and we hold that Kougl was given ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article II, Section 24 of the Montana Constitution. We

reverse Kougl's conviction for Operation of Unlawful Clandestine Laboratory.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ JIM RICE