DA 13-0527

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 244N

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

DANIEL MAHONEY,

        Defendant and Appellant.

APPEAL FROM:     District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DC 11-498
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

Appellate         Wade Zolynski, Chief Appellate Defender; Gregory Hood, Assistant
Defender; Helena, Montana

        For Appellee:

Timothy C. Fox, Montana Attorney General; Katie F. Schulz, Assistant
Attorney General; Helena, Montana

John Parker, Cascade County Attorney; Amanda Lofink, Deputy County
Attorney; Great Falls, Montana

Submitted on Briefs:  August 13, 2014
Decided:  September 10, 2014

Filed:

_____
                    Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Daniel Mahoney (Mahoney) appeals from the jury verdict finding him guilty of two counts of criminal endangerment and one count of driving under the influence (DUI). We affirm.

¶3 At around 8:00 p.m. on December 9, 2011, Linda Sangray (Linda) and James Richard Sangray (Richard) were backing their truck and a trailer carrying snowmobiles into the driveway of their cabin, located just off the highway. Two other individuals were helping them. Mahoney, returning from Showdown Ski Resort, struck the truck, injuring Linda and Richard and narrowly missing the spotters. The stretch of roadway approaching the Sangray cabin from Showdown was straight with a mile of clear visibility, and all of the truck lights were illuminated at the time of the impact. Linda testified that a previous vehicle had slowed to go around the truck. Accident scene investigation revealed no evidence that Mahoney applied the brakes.

¶4 Linda, Richard, and Mahoney were transported to the hospital. At around 10:00 p.m., Highway Patrol Trooper Danny Sons (Sons) spoke with Mahoney. Sons observed that Mahoney's eyes were glazed, watery, and bloodshot. He could smell the odor of an alcoholic beverage coming from Mahoney's breath, and Mahoney spoke slowly and deliberately. Mahoney "appeared to be in a stupor." Mahoney admitted to having had "a

2

couple" beers at Showdown. Mahoney's blood was drawn pursuant to a warrant; his blood alcohol concentration at approximately 11:10 p.m., about three hours after the accident occurred, was .22, almost three times the legal limit.

¶5      The State charged Mahoney by amended information with felony DUI and four counts of felony criminal endangerment, related to this incident. Before trial, the State submitted its proposed jury instructions. Among these was an instruction defining knowingly as follows: "A person acts knowingly when the person is aware of his or her conduct." Mahoney submitted one jury instruction, based on a statute which requires a vehicle entering a roadway to yield the right-of-way to approaching traffic. At the end of the first day of trial, the District Court settled jury instructions with the parties. Mahoney raised the issue of which "knowingly" definition applied to the offense of criminal endangerment, but did not object to the jury instruction defining "knowingly." Mahoney's theory of defense was that Richard's actions, not his, caused the accident. Following a two-day trial, the jury found Mahoney guilty of DUI and two counts of criminal endangerment. The District Court sentenced Mahoney to the Department of Corrections for a total of six years one month, with five years suspended.

¶6      We review jury instructions to determine whether the instructions, taken as a whole, fully and fairly instruct the jury as to the applicable law and whether the district court abused its discretion in instructing the jury. *State v. Gerstner*, 2009 MT 303, ¶ 15, 353 Mont. 86, 219 P.3d 866. Claims of ineffective assistance of counsel (IAC) are mixed questions of fact and law that this Court reviews de novo. *State v. Birthmark*, 2013 MT 86, ¶ 10, 369 Mont. 413, 300 P.3d 1140.

¶7     On appeal, Mahoney contends that this Court should exercise plain error review to consider his argument that the jury instruction set forth the wrong definition of "knowingly" for the offense of criminal endangerment. He also contends that his counsel was ineffective for failing to object to the offending jury instruction at trial.

¶8     "A party may not assign as error any portion of the instructions or omission from the instructions unless an objection was made specifically stating the matter objected to, and the grounds for the objection, at the settlement of instructions." Section 46-16-410(3), MCA. When a defendant raises the plain error doctrine to request our review of issues that were not objected to at the district court level, our review is discretionary. *State v. Gray*, 2004 MT 347, ¶ 13, 324 Mont. 334, 102 P.3d 1255. We will review only claimed errors that implicate a defendant's fundamental rights, where failing to review the error at issue may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process. *State v. Daniels*, 2003 MT 247, ¶ 20, 317 Mont. 331, 77 P.3d 224.

¶9     We decline to review Mahoney's challenge to the jury instructions under the plain error doctrine. Regardless of whether the jury was provided with the correct definition of "knowingly" as applied to the result-based offense of criminal endangerment, *see State v. Lambert*, 280 Mont. 231, 236-37, 929 P.2d 846, 849-50 (1996), we are not persuaded that this error resulted in a manifest miscarriage of justice, left unsettled the question of the fundamental fairness of the trial or proceedings, or compromised the integrity of the judicial process. Mahoney's theory of defense was an attempt to assign blame to Richard for the accident. If the jury had believed Mahoney's defense, the mental state with which he acted

4

would not have mattered at all. Since Mahoney did not emphasize the mental state element in his defense, we are not persuaded plain error review is necessary here.

¶10    Because the erroneous instruction did not prejudice the defense, moreover, Mahoney cannot satisfy the two-prong test for IAC set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). Under that test, the defendant must demonstrate both (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defendant. *McGarvey v. State*, 2014 MT 189, ¶ 24, ___ Mont. ___ , ___ P.3d ___ . To satisfy *Strickland*'s second prong, the defendant must show that, but for counsel's errors, a reasonable probability exists that the result of the proceeding would have been different. *State v. Miner*, 2012 MT 20, ¶ 12, 364 Mont. 1, 271 P.3d 56. We will only review IAC claims on direct appeal where, as here, the record provides an explanation for counsel's allegedly deficient conduct. *State v. Kougl*, 2004 MT 243, ¶ 14, 323 Mont. 6, 97 P.3d 1095.

¶11    The trial transcripts reveal that Mahoney's counsel recognized the potential for error in the definition of knowingly, but was not sure which definition should apply to criminal endangerment. Even if Mahoney's counsel failed to submit a jury instruction based on the correct definition of knowingly, his error did not prejudice the defense. The prosecution presented an array of evidence from which a jury could have concluded that Mahoney acted knowingly, even under the result-based definition: Mahoney's blood alcohol content was almost three times the legal limit three hours after the accident occurred, he made no attempt to brake, and a previous vehicle had slowed to go around the truck. There is no reasonable probability the outcome of the proceeding would have been different, but for Mahoney's counsel's error.

5

¶12 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The issues in this case are ones of judicial discretion and there clearly was not an abuse of discretion.

¶13 Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE