FILED

08/26/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0430

DA 23-0430

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 189

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JEFFREY SCOTT ANDERSON,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC-22-346
Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          James M. Siegman, Attorney at Law, Jackson, Mississippi

      For Appellee:

          Austin Knudsen, Montana Attorney General, Katie F. Schulz,
Assistant Attorney General, Helena, Montana

          Joshua A. Racki, Cascade County Attorney, Amanda Lofink, Deputy
County Attorney, Great Falls, Montana

Submitted on Briefs:  March 5, 2025

Decided:  August 26, 2025

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Jeffrey Scott Anderson (Anderson) appeals the judgment entered by the Eighth Judicial District Court, Cascade County, wherein the District Court rejected Anderson's argument that the State's Persistent Felony Offender (PFO) notice was untimely, and imposed a PFO sentence. Anderson also asks this Court to exercise plain error review over the District Court's omnibus hearing procedure.

¶2    We consider:

1.  *Whether the District Court abused its discretion by determining the State's PFO notice was proper and by sentencing Anderson as a Persistent Felony Offender.*

2.  *Whether plain error review should be conducted of the District Court's omnibus hearing procedure.*

¶3    We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    This case involves criminal charges arising out of Anderson's numerous violations of orders of protection prohibiting him from contacting his estranged wife, A.B., who separated from Anderson in the spring of 2022. In May 2022, A.B. obtained a temporary order of protection (TOP) which prohibited Anderson from calling, contacting, or having any other communication with A.B., and from being within 1,500 feet of A.B.'s home. Anderson quickly disregarded the TOP, initiating numerous communications with A.B, leading the State to charge him with multiple misdemeanor and felony violations of the TOP and to issue an arrest warrant. On June 9, 2022, because A.B. was late to the hearing to consider making the order permanent, the District Court dismissed the TOP. Very upset, A.B. immediately initiated an application for another TOP. However, Anderson followed

2

A.B. out of the Courthouse and, despite her request to leave her alone, continued his communications with her, sending 130 texts in a 5-hour period. Further charges would be added for these incidents. Officers located and arrested Anderson later that day on the outstanding warrant.

¶5 On June 10, 2022, Anderson appeared before the District Court, and pled not guilty to the charges. The District Court scheduled a jury trial for October 24, 2022. That same day, in accordance with the local rules of the Eighth Judicial District, the District Court ordered the parties to complete and forward to the court an electronic omnibus memorandum "on or before Wednesday, August 31, 2022 at 5:00 p.m."[1] The order further provided that "[n]otice of all pre-trial motions must be given in the omnibus order. Pre-trial motions not noticed in the omnibus order will be allowed only for good cause shown. In the omnibus order the State shall comply with Section 46-13-108, MCA, (Notice-Persistent Felony Offender)."

¶6 On August 31, 2022, at 4:52 p.m., the State emailed defense counsel, with the omnibus form as an attachment, stating, "I'm sorry this is so late. I was in trial and somehow missed this on my calendar. PFO notice is being done also as I type." At

---

[1] In the Sentencing Order and Judgment, which included extensive findings regarding its PFO ruling, the District Court stated:

> This Court no longer conducts in-person omnibus hearings. Instead, the trial scheduling order issued at Mr. Anderson's June 30, 2022 *Arraignment* provided:
>
> > Omnibus Orders will be **emailed** from the Prosecutor to Defense Counsel to be completed and then emailed to chambers [] on or before **Wednesday, August 31, 2022** *at 5:00 p.m.*
>
> CR14 (bolding in original, italics added here).

5:02 p.m., the State emailed two documents to defense counsel and the District Court, both titled Notice of Intent to Seek Treatment of Defendant as a Persistent Felony Offender. One document contained a brief notice of the State's intent to treat Anderson as a PFO (Simple Notice), while the other included further statutory language and details of the prior convictions the State intended to utilize to establish Anderson's PFO status (Detailed Notice).

¶7 The next day, September 1, the State filed the Simple Notice with the District Court with a certificate of service that stated the Simple Notice had been mailed to Anderson's counsel on August 31, 2022.[2] The same day, the Omnibus Hearing Memorandum and Order was docketed, which stated that "[t]he State will seek treatment of the defendant as a persistent felony offender. . . . The State provides [written notice specifying the alleged prior convictions which support such treatment] in Addendum A to this Order." However, Addendum A was not attached to the order. On September 6, 2022, the State filed the Detailed Notice it had previously emailed to the District Court, which included the list of Anderson's prior convictions, and included a certificate of service that stated a copy thereof had been hand-delivered to Anderson on September 2, 2022. Later in September, after reviewing videos from A.B.'s security system that showed Anderson jumping over A.B.'s backyard gate and disturbing the siding on her house, the State again amended the Information to add another felony charge of violating the order of protection.

---

[2] The Certificate of Service certified service on Anderson's counsel "by placing in the box at the Cascade County Courthouse."

¶8 The parties engaged in negotiations that eventually produced a Plea Agreement. Anderson acknowledged therein he had been charged with 16 felonies and 3 misdemeanors; the maximum penalties that he could receive for the offenses; that the State had filed notice of its intention to designate him as a PFO and the maximum penalties he could receive with that designation; and that in exchange for entering guilty pleas to eight of the charged offenses, the State had agreed to dismiss the remaining charges and, at sentencing, "not [] seek to sentence Defendant as a Persistent Felony Offender pursuant to M.C.A. §§ 46-18-501[3] and 46-18-502." Lastly, the Plea Agreement specified that "the forgoing sentencing recommendation is contingent upon the defendant not being arrested for, being charged with, or there being probable cause to believe he committed any additional crime(s) . . . not violating his bail conditions. . . . In the event the defendant violates this paragraph, the State may make any sentencing recommendation allowed by law."

¶9 On November 1, 2022, Anderson entered guilty pleas to the charges as specified in the Plea Agreement. Near the end of the hearing, Anderson moved to be released on his own recognizance (OR). The District Court granted the motion, explaining later that it had then mistakenly understood the Plea Agreement to recommend only suspended sentences,

---

[3] *See State v. Maggi*, 2024 MT 90, ¶ 13, n. 3, 416 Mont. 333, 547 P.3d 1245 ("The legislature has since amended the persistent felony offender statutes in 2017, which repealed § 46-18-501, MCA (2015), and incorporated a new definition of 'persistent felony offender' by reference to § 46-1-202(18), MCA. However, the 2017 amendment did not alter the pertinent language defining a persistent felony offender as an offender who has previously been convicted of a felony and who is presently being sentenced for a subsequent felony committed on a different occasion than the first. Rather, the 2017 amendment specified that the offender must be being sentenced for a third, rather than a second, felony and that at least one of the three felonies must be a sexual or violent offense.").

5

but, in doing so, admonished Anderson: "They [the State] are not kidding about you not contacting [A.B.]. And neither am I. Do not contact her again."

¶10 Prior to the sentencing hearing, the State petitioned to revoke Anderson's bond and OR release, alleging Anderson had continued to contact A.B. in violation of release conditions, including by using another person's online profile. At the sentencing hearing, the State argued it was entitled under the Plea Agreement, in light of Anderson's conduct, to deviate from its agreed sentencing recommendation and pursue designation of Anderson as a PFO. The District Court continued the sentencing hearing, ordered briefing on whether Anderson had breached the Plea Agreement and whether the State's PFO designation notice had been timely, and received oral argument. Anderson did not dispute that he had breached the agreement or committed the prior felony convictions, but argued the State's PFO notice was inadequate, contending that the notice was 2 minutes late and that defense counsel "leav[es] at 5," and that, in any event, the statute requires the notice to be docketed with the court before the time of the omnibus hearing, not merely provided to the defendant.

¶11 The District Court rejected Anderson's argument that the notice must be docketed to comply with the statute, noting that § 46-13-108, MCA,[4] requires only that the notice be "given" at or before the omnibus hearing. It further reasoned that:

> It was and is undisputed that the State emailed a notice that complied with the PFO statute at 5:02 p.m. on the day such notice was due. . . . [T]he scheduling order required that notice to be emailed by 5:00 p.m. The issue

---

[4] Anderson's offenses occurred in 2022, and thus references to the Montana Code Annotated are to the 2021 versions of the applicable statutes. *See Dexter v. Shields*, 2004 MT 159, ¶ 13, 322 Mont. 6, 92 P.3d 1208 ("It is axiomatic that when deciding a case involving the commission of a crime or sentencing for a crime, we use the criminal statutes in effect at the time of the commission.").

was accordingly whether emailing it *two minutes late* on August 31 foreclosed the State's resurrection of its PFO notice [after Anderson's breach of the Plea Agreement]. . . . The Court concluded it did not. Transmitting the detailed notice (including the underlying PFO offenses) two minutes late inflicted no actual prejudice in terms of preparing for trial or ultimately negotiating the plea agreement. It is not as if the evening of August 31 was the defense team's last chance to consider a response to the State's PFO strategy. They could have done this any time between August 31 and the execution of a plea agreement six weeks later. (Emphasis in original.)

The District Court thus allowed the State to proceed to sentencing upon its PFO request, and the District Court sentenced Anderson accordingly.

¶12 Anderson appeals.

## STANDARDS OF REVIEW

¶13 This Court reviews a defendant's sentence to more than one year of actual incarceration for legality. *State v. Gardner*, 2024 MT 283, ¶ 10, 419 Mont. 188, 559 P.3d 1241. Upon such review, we consider "whether the sentencing court had statutory authority to impose the sentence, whether the sentence falls within the parameters set by the applicable sentencing statutes, and whether the court adhered to the affirmative mandates of the applicable sentencing statutes," a determination which presents a question of law reviewed de novo. *Gardner*, ¶ 10 (internal citation omitted).

¶14 Regarding PFO notices, "[w]e review a district court's finding of good cause or prejudice for abuse of discretion." *Gardner*, ¶ 11 (citation omitted). "A court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *State v. Passmore*, 2010 MT 34, ¶ 51, 355 Mont. 187, 225 P.3d 1229 (internal citation omitted).

**DISCUSSION**

¶15    *1. Whether the District Court abused its discretion by determining the State's PFO notice was proper and by sentencing Anderson as a Persistent Felony Offender.*

¶16    As a preliminary matter, the State contends Anderson waived the issue of the validity of the State's original PFO notice, arguing that "[o]nce he pled guilty, Anderson waived the opportunity to challenge a procedural event that occurred prior to the court accepting his plea." The problem is that, at the time of entering his pleas on November 1, 2022, there was no need to challenge the PFO notice because, at that time, the State had agreed not to pursue a PFO designation in exchange for Anderson's guilty pleas, and thus, it was not then "on the table" as a sentencing issue. It was not until the sentencing hearing, on April 11, 2023, that the State expressed its intention to depart from the Plea Agreement because of Anderson's breaches of the Agreement, and again pursue a PFO designation. As the District Court later explained in its Sentencing Order and Judgment, this changed the course of the sentencing process:

> As anticipated, the State argued that Mr. Anderson's recent communications with [A.B.] violated release conditions and justified the State deviating from the plea agreement. What the Court had not anticipated was this taking the form of the State *resurrecting its previous PFO notice*. The State said this would strip the Court of its discretion to impose less than five years of incarceration. It changed the entire legal landscape of the sentencing. This . . . resulted in the Court continuing Mr. Anderson's April 11 sentencing so both sides could brief the PFO issue. (Italics in original; underlining added).

Thus, Anderson's sentencing was continued to permit the parties to submit briefing and make oral arguments on the issue of the PFO notice. While "[a] voluntary and intelligent guilty plea constitutes a waiver of nonjurisdictional defects and defenses," *State v. Claus*,

8

2023 MT 203, ¶ 9, 413 Mont. 520, 538 P.3d 14, we cannot conclude that the procedure here produced a "voluntary and intelligent" plea regarding an issue that had expressly been withdrawn, and which was not raised again until the sentencing hearing, when the District Court continued the hearing and permitted the parties to offer briefing and argument. Indeed, even the District Court indicated it did not anticipate the "resurrection" of the issue. This case is thus distinguished from *Claus*, and we conclude the issue was not here waived.

¶17     Anderson argues that the State's initial notice efforts were insufficient under the statute. He offers that the State's email at 4:52 p.m. on August 31, 2022, with the attached omnibus form indicating the State would pursue a PFO designation, was invalid because it failed to specify Anderson's prior convictions. Anderson largely ignores the State's email with attached Detailed Notice sent to Anderson's counsel and the District Court 10 minutes later at 5:02 p.m., which identified Anderson's prior crimes, the State's filing of the Simple Notice with the court on September 1, with service by mail, and the State's hand-delivered service of the Detailed Notice on September 2. Instead, Anderson skips to the conclusion that the filing of the Detailed Notice on September 6 was invalid because it was six days beyond the deadline. The implication of his argument that "46-13-108 does not mention the State can give a defendant notice of its intent to have a defendant treated under the PFO statutes by email before the Omnibus or by having a sheriff's deputy simply deliver it" is that the notice must be filed with the court to comply with the statute. Anderson's appellate arguments thus partially alter his position before the District Court that the 5:02 p.m. email was compliant with the statute but two minutes late, arguing instead that the September 6 notice was the first compliant notice, but six days late. The State answers that the statute

9

does not provide that a notice is valid only upon *filing*, that its notice was sufficient and timely served, and that the District Court correctly interpreted the statute by so concluding. Alternatively, the State argues that, even if notice was untimely given, Anderson was not prejudiced by the minimal delay.

¶18    Section 46-13-108, MCA (2021), provides:

> **46-13-108. Notice by prosecutor seeking persistent felony offender status.**
>
> (1) Except for good cause shown, if the prosecution seeks treatment of the accused as a persistent felony offender, *notice of that fact must be given at or before the omnibus hearing* pursuant to 46-13-110.
> (2) *The notice must specify the alleged prior convictions* and may not be made known to the jury before the verdict is returned except as allowed by the Montana Rules of Evidence.
> (3) If the defendant objects to the allegations contained in the notice, the judge shall conduct a hearing to determine if the allegations in the notice are true.
> (4) The hearing must be held before the judge alone.  If the judge finds any allegations of the prior convictions are true, the accused must be sentenced as provided by law.
> (5) The notice must be filed and sealed until the time of trial or until a plea of guilty or nolo contendere is given by the defendant.

(Emphasis added.)  In addition to giving a defendant opportunity to object to a predicate offense sought to be utilized in a PFO designation, "the requirement that notice be given to a defendant prior to the omnibus hearing ensures that a defendant knows the maximum penalties that could be imposed prior to making decisions about his defense." *Gardner*, ¶ 16.

¶19    Anderson urges us to read the language, "notice must be *given* at or before the omnibus hearing," § 46-13-108(1), MCA, to mean that the notice must be *filed* with the District Court to be compliant.  However, as the District Court reasoned, "[t]he statute does

not say this notice must be 'filed.' Neither does it say the notice must be 'served.' It only says that 'notice of that fact must be given' without further specifying the form of the notice or the means of transmitting it." Consistent with that plain reading is the orderly process set forth by the statute as a whole. If the prosecution intends to seek PFO treatment, it must give notice at or before the omnibus hearing (subsection 1). That notice "must specify the alleged prior convictions" and, procedurally, "may not be made known to the jury before a verdict is returned" except as allowed by the Rules of Evidence (subsection 2). If the defendant objects to the allegations in the notice, the court shall conduct a hearing and determine if the allegations are correct; if so, the defendant would be sentenced accordingly (subsection 3 and 4); *see also* § 46-18-502, MCA (enhanced penalties for PFO status). After the court's determination concerning the allegations, the notice "must be filed and sealed until the time of trial or until a plea" is entered (subsection 5). Clearly, the prosecution is to give notice, allowing the defendant the opportunity to object, and leading to a hearing and determination about the notice's allegations by the court. At that point, the notice is "filed and sealed" pending trial or entry of a plea. Section 46-13-108(4), MCA.

¶20 Consequently, the Detailed Notice provided with the State's email at 5:02 p.m. on August 31, 2022, was compliant with the statute. It "specif[ied] the alleged prior convictions," § 46-13-108(2), MCA, on which the State was basing the PFO designation. Unfortunately, it was provided two minutes after the deadline of 5:00 p.m., August 31, 2022, provided in the District Court's order, which raises the question of whether the notice was nonetheless valid.

¶21 In *Gardner*, the State filed notice of its intention to seek PFO treatment of the defendant 8 months after the omnibus hearing, and a mere two weeks before trial. *Gardner*, ¶ 4. Gardner objected, citing the untimeliness of the notice, no showing of good cause, and his need for "ample time to object to the designation." *Gardner*, ¶ 5. The State acknowledged the tardy notice was an "oversight more than anything," and the district court found that good cause was "very questionable." *See* § 46-13-108(1), MCA ("Except for good cause shown," notice must be given at or before the omnibus hearing.). The district court nonetheless allowed the State's PFO designation, reasoning that "the appropriate inquiry is whether the defendant had ample time to object to his PFO designation," and that Gardner had not articulated any prejudice from the late filing. *Gardner*, ¶ 8. We reversed, holding that the only basis upon which an untimely notice could be accepted by a court is the State's showing of good cause, which the State failed to demonstrate. *Gardner*, ¶ 17. We held that the court had abused its discretion as "no good cause for the delay legally or factually existed," and that "[a] 'busy caseload' is not good cause." *Gardner*, ¶ 18 (citing *State v. Greywater*, 282 Mont. 28, 37, 939 P.2d 975, 980 (1996)). The Court held that the district court's analysis of prejudice was misplaced, as that analysis becomes relevant only upon appeal, and under the statute is not the defendant's burden before the trial court. *Gardner*, ¶ 21.

¶22 In *State v. Shults*, 2006 MT 100, 332 Mont. 130, 136 P.3d 507, this Court reaffirmed its holding in *State v. McQuiston*, 277 Mont. 397, 922 P.2d 519 (1996), that "if a defendant had ample opportunity to object to PFO treatment, including the underlying charge on which the statute is based, and [the] defendant was not prejudiced by the timing of the

filing, we will not overturn a district court's decision to impose a sentence with a PFO designation." *Shults*, ¶ 22. There, the State indicated on an omnibus form its intentions to possibly seek PFO treatment. *Shults*, ¶ 20. Then, at a change of plea hearing, after the statutory deadline for PFO notice, the State provided a written notice of the prior convictions to be utilized for the PFO designation. Shults argued that the compliant notice was untimely and invalid. *Shults*, ¶ 21. The Court upheld the designation, noting that Shults "learned of the predicate offense when he pled guilty in November 2004 and the court sentenced him in March 2005," giving him "four months to file an objection to the alleged prior offense . . . before the court imposed sentence." *Shults*, ¶ 23.

¶23 In *State. v. Ramsey*, 2007 MT 31, 336 Mont. 44, 152 P.3d 710, the State noted on the omnibus form that it may seek a PFO designation, without listing any prior convictions. *Ramsey*, ¶ 19. At the omnibus hearing, the court ordered the State to file its prior convictions supporting a PFO designation by June 16, but the State was 5 days late in doing so, filing the list of convictions on June 22. *Ramsey*, ¶ 9. Five months later, at the sentencing hearing, Ramsey first objected to the untimeliness of the detailed notice. *Ramsey*, ¶ 19. We affirmed the PFO designation, restating the principles of *McQuiston* and *Shults*, and concluding that Ramsey was not prejudiced by the late filing because he had 5 months to file an objection to the alleged prior offenses. *Ramsey*, ¶ 20.

¶24 Contrary to *Gardner*, and with greater effort by the State here to comply with the statute than in *Shults* and *Ramsey*, no prejudice inured to Anderson from the State's 2-minute late email delivery of the Detailed Notice, nor from the 2-day late hand-delivered service of the Detailed Notice, nor from the 6-day late filing of the Detailed Notice. Plea

13

negotiations did not take place until October, and it was not until November 1, 2022, two months after the State first sent the Detailed Notice to Anderson, that Anderson pled guilty, acknowledging in his Plea Agreement that the State intended to seek PFO treatment. Anderson "had ample opportunity to object to PFO treatment, including the underlying charge[s]." *Shults*, ¶ 22. The timeline of this case establishes that Anderson had knowledge of "the maximum penalties that could be imposed prior to making decisions about his defense." *Gardner*, ¶ 16.

¶25 "A cause [affecting the convicted person's substantial rights] may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial." Section 46-20-701(1), MCA; *Gardner*, ¶ 21. "[I]f a defendant had ample opportunity to object to PFO treatment, including the underlying charge on which the statute is based, and that defendant was not prejudiced by the timing of the filing, we will not overturn a district court's decision to impose a sentence with a PFO designation." *Shults*, ¶ 22. While the District Court referenced the lack of prejudice to Anderson, we agree upon our analysis that Anderson suffered no harm from the manner in which the State provided the PFO notice.

¶26 *2. Whether plain error review should be conducted of the District Court's omnibus hearing procedure.*

¶27 Anderson argues the District Court erred by not conducting an in-person omnibus hearing. He notes that § 46-13-110(1), MCA, provides that "[t]he court *shall hold* an omnibus hearing," (emphasis added) and, as noted above, the District Court stated in its written order addressing the PFO issue that "[t]his Court no longer conducts in-person

14

omnibus hearings," in accordance with local rule. Anderson acknowledges that no objection was made in the District Court to the lack of an in-person hearing, and thus he asks that the Court exercise plain error review of the issue, arguing that the failure to conduct an in-person hearing implicates his right to due process. The State answers that the omnibus hearing statute does not require a defendant's attendance, unless ordered by the court, § 46-13-110(3), MCA,[5] and that the ministerial nature of an omnibus hearing does not generally compel a defendant's presence or participation. Here, the parties exchanged their respective disclosures based upon a schedule ordered by the District Court, and submitted the joint Omnibus Hearing Memorandum and Order without further court involvement. Further, the State argues that Anderson was not deprived of due process, and thus does not establish a basis for plain error review, because he was not deprived of the opportunity to be heard on any issue, and he did not request the District Court to schedule an omnibus hearing as permitted by the local rules.

¶28 We "may review unpreserved errors that implicate fundamental rights where failure to review them 'may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.'" *State v. Marfuta*, 2024 MT 245, ¶ 21, 418 Mont. 353, 557 P.3d 1260 (quoting *State v. Deveraux*, 2022 MT 130, ¶ 21, 409 Mont. 177, 512 P.3d 1198). This doctrine is applied "sparingly, on a case-by-case basis, considering the totality of the circumstances of each case." *Marfuta*, ¶ 21 (citing *State v. George*, 2020 MT 56,

---

[5] As quoted above, the PFO statute, § 46-13-108, MCA, cross-references the omnibus hearing statute, § 46-13-110, MCA.

¶ 5, 399 Mont. 173, 459 P.3d 854). "The party requesting reversal because of plain error bears the burden of firmly convincing this Court that the claimed error implicates a fundamental right and that such review is necessary. . . ." *George*, ¶ 5.

¶29 The reasoning for the rule—that "it is fundamentally unfair to fault the trial court for failing to rule on an issue it was never given the opportunity to consider," *Smith v. State*, 2024 MT 225, ¶ 21, 418 Mont. 210, 557 P.3d 55—is particularly apt in this case, where the District Court, already addressing the local rules, would have been well positioned to also consider Anderson's due process and statutory concerns about the omnibus process as conducted thereunder. We have already concluded that Anderson was not prejudiced by the PFO process followed in this case, and we further conclude that he has not firmly convinced this Court that review of the claimed error is necessary to preserve the fundamental fairness of the proceeding or the integrity of the judicial process.

¶30 Affirmed.

/S/ JIM RICE

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON

16