

DA 12-0564

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 47

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

RICHARD SCHAEFFER,

       Defendant and Appellant.


| | |
|---|---|
| APPEAL FROM: | District Court of the Eleventh Judicial District,<br>In and For the County of Flathead, Cause No. DC 11-015B<br>Honorable Katherine R. Curtis, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender, Eileen A. Larkin, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Pamela P. Collins, Assistant Attorney General, Helena, Montana

          Ed Corrigan, Flathead County Attorney, Kalispell, Montana

          Brett O'Neil, Special Assistant Attorney General, Helena, Montana

Submitted on Briefs: January 22, 2014

Decided: February 25, 2014

Filed:

_____

Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Richard Schaeffer appeals from his conviction of the crime of felony theft by insurance fraud in the Eleventh Judicial District Court, Flathead County.  We affirm.

¶2     Schaeffer presents the following issues for review:

¶3     *Issue One: Whether the District Court erred when it instructed the jury on the definition of an insurance administrator.*

¶4     *Issue Two: Whether this Court should conduct plain error review of the State's remarks during closing argument.*

¶5     *Issue Three: Whether the District Court erred by ordering Schaeffer to pay restitution when the affidavit of loss was prepared by an independent adjuster.*

¶6     *Issue Four: Whether Schaeffer received ineffective assistance of counsel.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶7     This case arises from an insurance claim filed by Schaeffer for a faulty roof on the home he was building for his son.  Schaeffer purchased materials for the metal roof from Glacier Steel Roofing, and hired Reese Hindman to install the roof.  On August 31, 2007, Schaeffer submitted an online complaint to the Montana Insurance Department, claiming that the roof installed by Hindman leaked.  He also filed a claim with Glacier Steel Roofing's insurance carrier, which sent an independent adjuster, Tom Damon, to investigate the claim. Damon determined that Hindman had not properly installed the roof, and the insurer settled the claim.  Scheaffer and his wife asked Ken Schweigert to repair the poorly installed roof. Schweigert replaced some of the roofing panels and installed ice shield and snow breaks in some areas of the roof, but did not fully replace the roof.

¶8     The following spring, Scheaffer called Schweigert to complain that the roof was leaking again.  Schweigert responded that he was busy with other roofing jobs, but would

2

look at the roof when he could. Schweigert did not return to repair the roof, and in December of 2008, Scheaffer filed a claim with Schweigert's insurance company, Penn-Star. Penn-Star hired an independent adjuster, Dave Muzzana, to investigate the claim. Muzzana interviewed Scheaffer and examined the roof. Scheaffer explained that the roof had originally been installed by Hindman, but had been redone by Schweigert. Muzzana asked Scheaffer if the roof had leaked prior to Schweigert's work, and Scheaffer responded that it had not. Muzzana recommended that Penn-Star pay Scheaffer's claim in the amount of $25,079.97. Penn-Star paid the claim and billed Schweigert for his policy deductible. When Schweigert learned that Penn-Star had paid Scheaffer's claim, he informed Penn-Star there had been problems with the original roof, and that he had not replaced the entire roof, but only portions. He also submitted a complaint to the Montana Insurance Department.

¶9 Scheaffer was charged with felony theft by insurance fraud on January 12, 2011. He pled not guilty, and at the omnibus hearing prior to trial, stated he did not intend to rely on a defense of mental disease or defect, but he did intend to argue that he did not have the requisite mental state. On October 17, 2011, approximately one week before trial was set to begin, the defense moved for a continuance and submitted a letter by neurologist Dr. Bret Lindsay, who stated that Schaeffer was being treated for "sequela of multiple traumatic brain injuries associated with depression and cognitive and memory disturbance." The trial date was continued to February 6, 2012. On January 12, 2012, counsel for Scheaffer submitted a list of lay witnesses that included Dr. Lindsay. The State moved to exclude Dr. Lindsay on the grounds that his testimony would likely be used to establish a mental disease or defect, a

3

defense that had not been disclosed at the omnibus hearing. The defense then withdrew Dr. Lindsay as a witness.

¶10 At trial, the State requested the following jury instruction: "An administrator is a person who adjusts or settles claims in connection with life, disability, property, or casualty insurance." The State offered the instruction to show that Muzzana, an adjuster, could be considered an "insurer, purported insurer, producer, or administrator," and therefore encompassed by the insurance fraud statute, § 33-1-1202(1), MCA. The defense objected to this instruction, arguing that it was both unnecessary, because Muzzana was acting on behalf of an insurer and therefore clearly within the statute, and inaccurate, because an adjuster is not an administrator. The District Court concluded that the statutory definition of administrator did not exclude independent adjusters, and gave the instruction.

¶11 During closing argument, the State made the following remarks:

> We all know insurance rates are getting higher and getting higher. This type of behavior contributes to all our insurance rates escalating. The State feels this type of event simply cannot be condoned. The State's passed laws to do that, the State has charged its officers with enforcing the law, that's where we're at right now.

The defense did not object to the State's closing argument. Scheaffer was convicted. The presentencing investigation report (PSI) included an affidavit of loss submitted by Muzzana on behalf of Penn-Star, stating that Penn-Star had sustained a loss of $25,079.97. Scheaffer received a six-year deferred sentence and was ordered to pay restitution in the amount of $25,079.97.

**STANDARD OF REVIEW**

4

¶12    We review jury instructions in a criminal case to determine whether the district court abused its discretion. *State v. Swann*, 2007 MT 126, ¶ 32, 337 Mont. 326, 160 P.3d 511. A district court has broad discretion when it instructs a jury. *Swann*, ¶ 32. Reversible error exists only where the instructions prejudicially affect the defendant's substantial rights. *State v. Hovey*, 2011 MT 3, ¶ 10, 359 Mont. 100, 248 P.3d 303.

¶13    This Court generally does not review claims of prosecutorial misconduct arising from statements made in closing argument when the statements at issue were not objected to at trial. *State v. Aker*, 2013 MT 253, ¶ 21, 371 Mont. 491, 310 P.3d 506. We may do so, however, pursuant to our discretionary power of plain error review. *State v. Finley*, 276 Mont. 126, 137, 915 P.2d 208, 215 (1996), *rev'd in part on other grounds*, *State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817.

¶14    A criminal sentence that does not include at least one year of actual incarceration is reviewed first for legality, and then for abuse of discretion. *State v. McMaster*, 2008 MT 268, ¶¶ 20-21, 345 Mont. 172, 190 P.3d 302. We review record-based claims of ineffective assistance of counsel de novo. *Aker*, ¶ 22.

**DISCUSSION**

¶15 *Issue One: Whether the District Court erred when it instructed the jury on the definition of an insurance administrator.*

¶16 Scheaffer argues that the instruction defining an administrator as "a person who adjusts or settles claims in connection with life, disability, property, or casualty insurance" effectively removed the State's burden to prove that Muzzana was one of the parties encompassed by the insurance fraud statute. He argues that an adjuster cannot be an administrator, because the term "adjuster" is defined separately.

¶17 The purpose of jury instructions is to ensure decisions that are consistent with the law. *Hovey*, ¶ 10. A district court must take care to provide instructions that fully and fairly state the applicable law. *Swann*, ¶ 32. Instructions should also be as plain, clear, and concise as possible. *Hovey*, ¶ 10.

¶18 A person commits the act of insurance fraud when, for the purpose of obtaining money or benefits, he or she presents false or misleading information to "any insurer, purported insurer, producer, or administrator, as defined in 33-17-102 . . . ." Section 33-1-1202(1), MCA. An administrator is defined by statute as "a person who collects charges or premiums from residents of this state in connection with life, disability, property, or casualty insurance or annuities or who adjusts or settles claims on these coverages." Section 33-17-102(3)(a), MCA. An adjuster is defined as "a person who, on behalf of the insurer, for compensation as an independent contractor or as the employee of an independent contractor or for a fee or commission investigates and negotiates the settlement of claims

6

arising under insurance contracts or otherwise acts on behalf of the insurer." Section 33-17-102(1)(a), MCA.

¶19 When interpreting a statute, we look first to the plain meaning of the words used by the Legislature. *State v. Ankeny*, 2010 MT 224, ¶ 21, 358 Mont. 32, 243 P.3d 391. If the intent of the Legislature can be determined from the plain language of the statute, no further means of interpretation may be applied. *Ankeny*, ¶ 21. The statutory definition of "administrator" plainly states that an administrator may be a person who collects charges or premiums from consumers, or a person who adjusts or settles claims. Section 33-17-102(3)(a), MCA. The definition does not require an administrator to perform both of these functions. Section 33-17-102(3)(a), MCA. The definition also excludes twelve specific categories of persons or entities who are not administrators. Section 33-17-102(3)(b), MCA. For example, an attorney who adjusts or settles claims, but who does not collect charges or premiums, is excluded. Section 33-17-102(3)(b)(xi), MCA. Independent adjusters are not excluded. Section 33-17-102(3)(b), MCA. We cannot reasonably conclude that the Legislature intended to exclude independent adjusters from a definition that includes the phrase "a person . . . who adjusts or settles claims," and fails to list independent adjusters among an extensive list of specific exclusions.

¶20 The instruction given by the District Court accurately stated the applicable law in a plain and concise manner. Moreover, Scheaffer cannot show he was prejudiced by the instruction when he admitted at trial that Muzzana, as an agent of Penn-Star, was encompassed by the term "insurer." The District Court did not abuse its discretion when it instructed the jury that an administrator is a person who adjusts or settles claims.

7

¶21 *Issue Two: Whether this Court should conduct plain error review of the State's remarks during closing argument.*

¶22 We exercise plain error review only where the defendant's constitutional rights are implicated and failure to review the claimed error "may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *Finley*, 276 Mont. at 137, 915 P.2d at 215.

¶23 Prejudice as a result of improper comments made by a prosecutor during closing argument is not presumed. *State v. Gladue*, 1999 MT 1, ¶ 27, 293 Mont. 1, 972 P.2d 827. The defendant must demonstrate that the comments of the prosecutor, when viewed in the context of the case as a whole, violated his or her right to a fair and impartial trial. *Gladue*, ¶ 27.

¶24 Schaeffer was convicted following a two-day trial. The evidence against him included an audio recording of his statements to Muzzana that the roof had not leaked prior to Schweigert's repairs, and a copy of his written statement to the Montana Insurance Department stating that the roof installed by Hindman leaked. Schaeffer has not demonstrated that the prosecutor's reference to rising insurance rates was prejudicial when viewed in this context. Accordingly, we are not convinced that failure to review his claims will result in a manifest miscarriage of justice, leave unsettled the fundamental fairness of the trial, or compromise the integrity of the judicial process. *See Finley*, 276 Mont. at 137, 915 P.2d at 215. We decline to exercise plain error review.

¶25 *Issue Three: Whether the District Court erred by ordering Schaeffer to pay restitution when the affidavit of loss was prepared by an independent adjuster.*

¶26     The District Court ordered Schaeffer to pay restitution in the amount of $25,079.97, based on the affidavit of loss, which was signed "Penn Star Ins. Co. by Dave Muzzana." Scheaffer argues he cannot be required to pay restitution absent an affidavit by the victim, and Muzzana's affidavit on behalf of Penn-Star does not satisfy this requirement.

¶27     If a sentencing court finds that a victim has sustained a pecuniary loss, it must order the offender to pay full restitution. Section 46-18-241(1), MCA. Pecuniary loss includes "all special damages . . . substantiated by evidence in the record . . . ." Section 46-18-243(1)(a), MCA. Although restitution is mandatory, the sentencing court must comply with "detailed procedures and qualifications" before it is authorized to impose a sentence of restitution. *State v. Pritchett*, 2000 MT 261, ¶ 7, 302 Mont. 1, 11 P.3d 539.

¶28     When the court believes a victim may have sustained a pecuniary loss, "the court shall order the probation officer . . . to include in the [PSI] . . . an affidavit that specifically describes the victim's pecuniary loss and the replacement value in dollars of the loss, submitted by the victim." Section 46-18-242(1)(b), MCA. We have construed this requirement strictly, remanding where the victim submitted a written statement of loss that was not a sworn affidavit. *State v. Hunt*, 2009 MT 265, ¶¶ 21-22, 352 Mont. 70, 214 P.3d 1234. We have also remanded where the affidavit was not supported by documentation, under earlier statutes so requiring. *Pritchett*, ¶ 13.

¶29     While reasonable efforts should be made to confer with the victim when determining pecuniary loss, the victim is not required to participate in preparation of the PSI. Section 46-18-112(1)(f), MCA. In fact, a sentencing court may order restitution on a victim's behalf, even if the victim cannot be located. Section 46-18-250(1), MCA. The affidavit of loss is

9

not the only evidence that may be considered when determining the victim's pecuniary loss. *McMaster*, ¶ 35. An order of restitution may also be based upon testimony at the sentencing hearing. *McMaster*, ¶ 35. Where a PSI does not meet statutory requirements, the defect may be remedied by a full evidentiary hearing. *State v. Dunkerson*, 2003 MT 234, ¶ 18, 317 Mont. 228, 76 P.3d 1085.

¶30    The affidavit submitted by Muzzana on behalf of Penn-Star satisfied the requirement of a victim-submitted affidavit. Determining the amount of loss related to Scheaffer's claim was within the scope of duties delegated to Muzzana by Penn-Star. He was authorized to investigate and settle the claim on their behalf. The affidavit was properly sworn. It was also supported by documentation, including Muzzana's report and recommendation for payment of Schaeffer's claim in the amount of $25,097.79. The report included itemized estimates supporting the amount. The defects which have previously justified our remand of a restitution order are not present here. *See e.g. Hunt*, ¶ 22; *Pritchett*, ¶ 13.

¶31    Moreover, although an affidavit was submitted in this case, Penn-Star was not obligated to participate directly in preparing the PSI. Section 46-18-112(1)(f), MCA. The District Court was authorized to accept evidence of Penn-Star's loss at the time of sentencing. *See McMaster*, ¶ 35. At sentencing, Muzzana testified that he recommended payment of $25,079.97 and that a check was issued by Penn-Star directly to Schaeffer. He was subject to cross-examination. Documentation substantiating the amount of the claim was in evidence. Scheaffer introduced evidence challenging the amount. Scheaffer and his wife testified in his defense. This hearing was sufficient to remedy the alleged lack of a victim-submitted affidavit. *See Dunkerson*, ¶ 18.

¶32    The District Court's finding that Penn-Star had suffered pecuniary loss in the amount of $25,079.97 was substantiated by evidence in the record. Based on the finding that Penn-Star had suffered a pecuniary loss, the District Court was required by statute to order Schaeffer to pay restitution. Section 46-18-201(5), MCA. The sentence imposed was within statutory parameters, and the District Court did not abuse its discretion.

¶33    *Issue Four: Whether Schaeffer received ineffective assistance of counsel.*

¶34    Schaeffer argues that his attorney provided ineffective assistance by disclosing Dr. Lindsay as a lay witness, rather than as an expert. Scheaffer claims there is no plausible justification for failing to disclose Dr. Lindsay as an expert. Before reaching the merits of Scheaffer's ineffective assistance claim, we must determine whether it is properly before the Court on direct appeal. *State v. Upshaw*, 2006 MT 341, ¶ 33, 335 Mont. 162, 153 P.3d 579.

¶35    A claim of ineffective assistance of counsel may be raised on direct appeal where the record reveals why counsel took, or failed to take, certain actions. *Upshaw*, ¶ 33. If the record does not explain the actions of counsel, then the claim should be raised in a postconviction proceeding before a district court, where an evidentiary record may be developed. *State v. Kougl*, 2004 MT 243, ¶ 14, 323 Mont. 6, 97 P.3d 1095. Non-record based claims may also be raised on direct appeal in those limited circumstances where counsel either failed to do something that was required, or did something for which there is no plausible justification. *Kougl*, ¶ 15. An attorney's decision not to offer expert medical testimony may be a reasonable tactical choice. *State v. Jay*, 2013 MT 79, ¶ 37, 369 Mont. 332, 298 P.3d 396.

11

¶36 The record here does not explain why Scheaffer's attorney chose not to offer Dr. Lindsay as an expert witness. There is no evidence in the record indicating what information, if any, Dr. Lindsay would have been able to offer. We cannot affirmatively say there is no plausible justification for the actions of counsel. *See Jay*, ¶ 37. Scheaffer's claim of ineffective assistance of counsel is dismissed without prejudice, and may be raised in a petition for postconviction relief.

¶37 For the reasons stated above, the conviction is affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ LAURIE McKINNON