JUSTICE MCKINNON,
specially concurring.
¶31 I write separately to address some issues that have arisen within *482 our plain error jurisprudence, which seem to be contributing to its state of disarray. First, we have adopted two distinct lines of analysis for evaluating unpreserved claims of error under the plain error doctrine. Second, adding to the confusion, we have been inconsistent with respect to the meaning of the term “plain error review,” “plain error doctrine,” and “plain error,” particularly as it relates to a decision declining to exercise, conduct, or otherwise engage in the standard of review. Lastly, we have been unclear in our application of the specific considerations or criteria relevant to plain error review.
¶32 Preliminarily, plain error review is a standard of review, closely related to harmless error review. State v. Martinez, 188 Mont. 271, 279, 613 P.2d 974, 979 (1980); § 46-20-701, MCA; United States v. Olano, 507 U.S. 725, 731-32, 113 S. Ct. 1770, 1776 (1993). When a defendant alleges an error in the trial court proceedings, a court may apply either harmless error review or plain error review, depending upon whether the claimed error is preserved on appeal. See Town of Columbus v. Harrington, 2001 MT 258, 307 Mont. 215, 36 P.3d 937. If a defendant preserves his claim of error by raising a contemporaneous objection during the trial court proceedings or by submitting a motion in limine, we apply harmless error review and the State has the burden of demonstrating the error was harmless. Conversely, if a defendant fails to properly preserve his issue for appeal, we apply the plain error standard of review and the defendant has the burden of persuasion. Olano, 507 U.S. at 734-35, 113 S. Ct. at 1778; State v. Godfrey, 2004 MT 197, 322 Mont. 254, 95 P.3d 166.
¶33 Therefore, in general, we may either review under harmless error or plain error. Although there may be instances in which we actually do decline to review under the plain error standard of review; for example, a claim raised in the reply brief[1] or the doctrine of invited error[2] — in those instances we do not exercise appellate jurisdiction over the claim and do not review the proceedings. Any time we review proceedings of the trial court, we need to do so under a standard of *483 review. If we are going to review trial court proceedings based on an unpreserved claim of trial error, we cannot decline to apply plain error review as this is the only applicable standard of review.
¶34 Montana’s plain error doctrine derives from our decision in State v. Finley, 276 Mont. 126, 915 P.2d 208 (1996). In Finley, we first enunciated our adoption of the common law doctrine of plain error to “correct obvious, fundamental, constitutional, or substantial errors” not objected to at trial which affect the “fairness, integrity, and public reputation of judicial proceedings.” Finley, 276 Mont. at 134, 915 P.2d at 213. Drawing from federal precedent, we enunciated the doctrine as follows:
[W]e hold that this Court may discretionarily review claimed errors that implicate a criminal defendant’s fundamental constitutional rights, even if no contemporaneous objection is made ... where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process. In so holding, [we rely] on our inherent power of appellate review under Montana’s Constitution.
Finely, 276 Mont. at 137-38, 915 P.2d at 215. The particular facts and circumstances of each case dictate the applicability of the plain error doctrine. Finley, 276 Mont. at 134, 915 P.2d at 215.
¶35 In the wake of Finley, we began to apply two different analytical approaches for conducting plain error review, using the Finley criteria in different ways. Our inconsistent terminology has added to the confusion and appears inextricably intertwined with the creation of these two divergent strains of plain error review. Justice Leaphart recognized the problem in State v. Haagenson, 2010 MT 95, 356 Mont. 177, 232 P.3d 367, explaining “[w]e have not been consistent in our use of the verb ‘decline’ as it relates to the ‘plain error doctrine’ versus ‘plain error review.’ ” Haagenson, ¶ 25 (Leaphart, J., concurring). Justice Leaphart noted that we have cases in which we simply decline to exercise plain error review with essentially no explanation or indication that we analyzed the appeal under the Finley criteria; cases in which we engage in the review of the alleged plain error, but decline to invoke the plain error doctrine; and cases where we discuss the merits of the claim and then decline to exercise plain error review. Haagenson, ¶ 25 (Leaphart, J., concurring). These semantic inconsistencies have been difficult for the Court and litigants to interpret and have interfered with a consistent application of analysis *484 when addressing a claim of unpreserved error.
¶36 Our confusing terminology is due, in part, to the emergence in Montana’s jurisprudence of two identifiable analytical approaches to a single standard of review. On the one hand, what might be referred to as the traditional approach, we examine the record and the merits of the claim to determine whether the Finley criteria are satisfied. If they are, we next decide whether to invoke our discretion to reverse the trial court. This approach allows for consideration of the Finley criteria independently or together, depending on the facts and circumstances of the particular case, and also allows this Court to consider whether there was any error in the first instance. If any one of the criteria is not met, including that error has not actually occurred, then our analysis may be shortened by simply affirming the trial court. Importantly, even if the Finley criteria are satisfied, this Court still has the discretion to deny relief.
¶37 We have followed this traditional approach, although with incorrect terminology, in many cases. See, e.g., State v. Crider, 2014 MT 139, 375 Mont. 187, 328 P.3d 612 (stating that “we decline to exercise plain error review,” after extensively reviewing the proceedings and the merits of an unpreserved claim of error); In re D.K.D., 2011 MT 74, 360 Mont. 76, 250 P.3d 856 (stating that “we decline to exercise plain error review here,” after reviewing the proceedings and “conclud[ing] that there was no plain error here”); State v. White, 2014 MT 335, 377 Mont. 332, 339 P.3d 1243 (stating that “[w]e decline to exercise plain error review,” after reviewing the proceedings and concluding that “it was an error to fail to comply with § 46-7-102, MCA”); State v. Norquay, 2011 MT 34, 359 Mont. 257, 248 P.3d 817 (stating, “[w]e decline to apply plain error review,” after reviewing the proceedings and concluding that there was error); State v. Thorp, 2010 MT 92, 356 Mont. 150, 231 P.3d 1096 (after reviewing the record to determine whether the State was improperly eliciting a response from its witness regarding credibility of the victim, we concluded that the “response does not rise to the level of impermissible vouching that would warrant plain error review”). In these instances, we are using the term “plain error review” incorrectly as short-hand for whether reversing the trial court is appropriate. Having already reviewed the proceedings and concluded that no error exists, we are merely explaining that reversal is inappropriate under the plain error doctrine. In other words, “we decline to exercise plain error review” translates to “we decline to exercise plain error review to reverse.” While our terminology in the aforementioned cases is incorrect and *485 confusing, these cases demonstrate that we considered in the first instance whether there was, in fact, any error.
¶38 In contrast, there have also been numerous cases where this Court has applied what might be referred to as a “threshold” analytical approach — which appears unique to Montana — requiring satisfaction of the Finley criteria as an initial inquiry prior to addressing the merits of the alleged error. Instead of applying the Finley criteria to determine whether reversing the trial court is appropriate, in these cases we apply the Finley criteria as a threshold for determining whether we will even address the merits of the claimed error. This approach embroils the Court in a review of the trial court proceedings and inevitably leads to at least some consideration of the merits of the alleged error. We then find ourselves in the unsound position of holding we will not exercise plain error review to review the error even though we have already reviewed the proceedings. See, e.g., State v. Legg, 2004 MT 26, 319 Mont. 362, 84 P.3d 648 (after reviewing the record “Legg does not meet the narrow [Finley] criteria required to invoke our discretionary plain error review, we decline to address the merits of Legg’s argument under plain error review”); State v. Hart, 2000 MT 332, 303 Mont. 71, 15 P.3d 917 (after reviewing the record, we determined that Hart failed to meet the second prong of Finley and “decline[d] to address Hart’s contention” that the prosecutor’s statements violated his right to confrontation, reasoning that “Hart has failed to demonstrate that this is an appropriate use of our common law power of plain error review”).[3] To use the harmless error analogy, this threshold inquiry is akin to reviewing the proceedings under the harmless error standard of review; concluding that the second prong of harmless error review is not satisfied because the defendant was not prejudiced; declining to decide whether there was error because the second prong is not satisfied; and then stating that the harmless error standard of review is an inappropriate method of review. As was the case under the traditional approach, we are using the term “plain error review” incorrectly. When we use the Finley criteria as a threshold to our inquiry and state that we “decline to engage in plain error review,” we are actually engaging in plain error review, but Eire declining to resolve the merits of the claimed error; that is, we are engaging in plain error review but declining to determine whether there is error.
*486 ¶39 In my opinion, the time has come to reconcile these two conflicting lines of analysis. We should do so not only to promote internal consistency within our opinions, but also to promote consistency in appellant arguments. For instance, in this case, the State did not address the merits of Favel’s claim of error in its brief — likely understanding our standard of review to require a threshold showing of the Finley criteria before considering the merits of the alleged error.
¶40 In my view, the traditional method provides the most fundamentally sound analysis. First, the traditional approach is consistent with Finley and furthers the purposes underlying the plain error doctrine. The plain error doctrine is “not a rule of reviewability, rather, it is a rule of reversibility, i.e., it is a doctrine that a reviewing court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court’s judgment, for reasons of policy.” 5 Am. Jot, 2d Appellate Review § 716 (2014) (emphasis added). By using the Finley criteria to determine whether to review the claimed error, rather than using the criteria to determine whether to reverse the trial court, we necessarily lose focus on what should be the central inquiry: to discretionarily “correct error not objected to at trial ... [which] affects the fairness, integrity, and public reputation of judicial proceedings.” Finely, 276 Mont. at 134, 915 P.2d at 213. Our exercise of discretion must be guided by whether the error necessitates reversal because it has affected the fairness and integrity of the proceeding. In focusing on this inquiry, we inevitably will have to consider the error itself.
¶41 Second, refusing to address the merits of the claim until after a party makes a threshold showing is against the clear weight of authority. The overwhelming consensus among appellate courts is that the “first step of plain-error review is to determine whether any error occurred.” People v. Lewis, 234 Ill. 2d 32, 43, 912 N.E.2d 1220, 1227 (2009).[4] Indeed, Montana stands alone in its refusal to address the *487 merits until a preliminary plain error test has been satisfied. Uniformity with our sister jurisdictions counsels heavily in favor of the traditional method, particularly in an area of the law that is rooted in common law, where we stand to benefit from case law in these other jurisdictions.
¶42 Lastly, in using the threshold method — with the Finley criteria inherently requiring a certain amount of discussion on the merits and with the Court unable to resolve the merits — we frequently find ourselves in the untenable position of attempting to walk a fine line, leading to comments from this Court, such as: we find the prosecutor’s comments “troubling,” State v. Lacey, 2012 MT 52, ¶ 24, 364 Mont. 291, 272 P.3d 1288, “we do not condone the prosecutor’s comments,” State v. Lindberg, 2008 MT 389, ¶ 34, 347 Mont. 76, 196 P.3d 1252, or worse yet, the defendant “fail[ed] to demonstrate the prosecutor’s comments amounted to any error,” but we refuse to “set a precedent.” State v. Daniels, 2003 MT 247, ¶¶ 27-28, 317 Mont. 331, 77 P.3d 224. Trial courts and litigants deserve a clear statement on the standard of review and whether there is error or not. While resolving the merits may necessarily require more effort by this Court, the guidance that is provided to litigants and trial courts will generally outweigh any effort saved by declining to address the merits of the alleged error.
¶43 In my opinion, we must remain consistent with Finley and the principles articulated in federal precedent upon which Finley relied. In Finley we adopted the plain error standard used by the United States Supreme Court in United States v. Atkinson, 297 U.S. 157, 56 S. Ct. 391 (1936). Finley, 276 Mont. at 134, 915 P.2d at 213. See also, State v. Reichmand, 2010 MT 228, ¶ 48, 358 Mont. 68, 243 P.3d 423 (Rice, J., dissenting) (explaining that“[o]ur Finley plain error test is nearly identical to the plain error test announced in U.S. v. Atkinson”). In Olano, the Supreme Court clarified Atkinson by explaining relevant considerations for plain error review; there must be; (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) affects the fairness, integrity, or public reputation of the judicial proceedings. Olano, 507 U.S. at 735-37, 113 S. Ct. at 1778-79. The Finley criteria and the federal test share common beginnings and our analysis in practice, to the extent it conforms to any well-defined standard, follows the federal test.
¶44 For example, we have held it is axiomatic under our standard of review that there needs to be error to reverse the trial court. State v. Arlington, 265 Mont. 127, 150, 875 P.2d 307, 321 (1994). Also consistent with federal precedent, we have held the error must be *488 “plain.” Stoic v. Godfrey, 2004 MT 197, ¶ 38, 322 Mont. 254, 95 P.3d 166 (explaining that a “fundamental aspect of‘plain error,’ is that the alleged error indeed must be ‘plain.’ ”); State v. Upshaw, 2006 MT 341, ¶ 26, 335 Mont. 162, 153 P.3d 579 (“A fundamental aspect of ‘plain error,’ is that the alleged error must indeed be ‘plain.’ ”); State v. Tadewaldt, 2010 MT 177, ¶ 20, 357 Mont. 208, 237 P.3d 1273 (“A prerequisite to plain error review is that it be plain that there was error at trial.”).[6]
¶45 We have on several previous occasions characterized the fundamental rights prong of the Finley criteria in terms of substantial rights, which is similarly consistent with the federal courts. Arlington, 265 Mont. at 152, 875 P.2d at 322 (“The ‘plain error’ doctrine provides a remedy where substantial rights of a party have been infringed.”). See also, State v. Wilkins, 229 Mont. 78, 746 P.2d 588 (1987); State v. McDonald, 2013 MT 97, 369 Mont. 483, 299 P.3d 799. Furthermore, the United States Supreme Court has explained, “Normally, although perhaps not in every case, the defendant must make a specific showing of prejudice to satisfy the ‘affecting substantial rights’ ” prong of plain error review. Olano, 507 U.S. at 735, 113 S. Ct. at 1778 (emphasis added). Here, perhaps more than any element of the federal plain error test — other than whether there need be error — we are in agreement. Prejudice permeates throughout our analysis in nearly every plain error review case. See, e.g., State v. Schaeffer, 2014 MT 47, ¶ 24, 374 Mont. 93, 321 P.3d 809 (“Schaeffer has not demonstrated that the prosecutor’s reference to rising insurance rates was prejudicial when viewed in this context.”); White, ¶ 36 (“White was not prejudiced by his absence from the fitness proceeding.”); State v. Wagner, 2009 MT 256, ¶ 21, 352 Mont. 1, 215 P.3d 20 (“This inference of guilt caused actual *489 prejudice to Wagner constituting plain error.”); Arlington, 265 Mont. at 153, 875 P.2d at 322 (“we conclude that there is no evidence of any prosecutorial misconduct or prejudice here at all”).
¶46 Finally, the language of the fourth element of the federal test corresponds to tías Finley criteria almost verbatim: “leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.” Finley, 276 Mont. at 137, 915 P.2d at 215.
¶47 It is my view that we have drifted from the principles and inquiry first enunciated in Finley. We have infused into our opinions confusing semantics, and added further confusion through the development of two analytical frameworks for the same standard of review. As a result, we have provided little guidance or consistency in our precedent. We do not address requests to exercise plain error review in a vacuum. When we review a claim of unpreserved error it must be pursuant to a standard of review: plain error review. When this Court looks at a claim of unpreserved error, no matter how minimal the examination, we are conducting plain error review. Whether we exercise our appellate authority to reverse is discretionary and will depend on consideration of the relevant criteria. If the shortest path to resolution of the claim is to find that there was no error, then we have the flexibility to make such a determination. I would not confuse what is otherwise a straightforward and clear standard of review.
¶48 I offer the above analysis with the hope that, in due course, it will be seized upon to provide consistency in our opinions and guidance for those litigating before this Court.

 State v. Johnson, 2010 MT 288, ¶ 13, 359 Mont. 15, 245 P.3d 1113 (“we previously have refused to invoke the common law doctrine of plain error review when a party raises such request for the first time in his reply brief.”),

 Some courts have recognized a rule known as the doctrine of invited error, which prohibits review in certain circumstances despite the otherwise applicability of plain error review. See, e.g., United States v. Perez, 116 F.3d 840, 845 (9th Cir. 1997) (en banc) (“We have held repeatedly that where the defendant himself proposes allegedly flawed jury instructions, we deny review under the invited error doctrine.”).

 See also Thorp, ¶ 45 (Nelson, J., concurring); Jackson, ¶ 75 (Nelson, J., concurring).

 Accord, State v. Kelley, 855 N.W.2d 269, 273-74 (Minn. 2014); State v. Lawrence, 365 N.C. 506, 511-12, 723 S.E.2d 326, 330 (2012); People v. Cannes, 460 Mich. 750, 765, 597 N.W.2d 130, 139 (1999); State v. Miller, 194 W. Va. 3, 18, 459 S.E.2d 114, 129 (1995); State v. Dotson, 450 S.W.3d 1, 49 (Tenn. 2014); People v. Hampton, 746 P.2d 947, 953 (Colo. 1987); State v. Olander, 1998 N.D. 50, ¶ 14, 575 N.W.2d 658 (1998); Snow v. State, 2009 WY 117, ¶ 13, 216 P.3d 505 (2009); State v. Russell, 159 N.H. 475, 489, 986 A.2d 515, 527 (2009). Similarly, under federal law the initial inquiry under the plain-error doctrine is to determine whether there is error. Johnson v. United States, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 1548-49 (1997).

 Here again, we have been inconsistent in our case law, but currently require that the error be plain. In State v. Taylor, 2010 MT 94, ¶ 17, 356 Mont. 167, 231 P.3d 79, we overruled Godfrey. “In short, the ‘error must be plain’ language is not an independent third requirement of common plain error. Rather, it serves as a guide in determining whether the second prong of the Finley test has been satisfied.” Nonetheless, we again reversed ourselves in Tadewaldt. As a general proposition, since Tadewaldt, we have required that the error be plain, either expressly or implicitly. Compare In re D.K.D., ¶ 16 (“We have recently held that, to apply the common law plain error doctrine, the ‘error must be plain’ and we must be ‘firmly convinced’ that an aspect of the proceeding, if not addressed, would result in one of the aforementioned consequences.”) with State v. Ugalde, 2013 MT 308, ¶ 62, 372 Mont. 234, 311 P.3d 772 (“While we do not decide whether the prosecution’s argument was objectionable, we conclude after a review of the record and the District Court’s careful consideration of the issue that — in the context of the surrounding statements — it did not rise to the level of plain error.”).