FILED

09/30/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0667

DA 23-0667

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 223N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

LUCAS JAMES RICHESON,

Defendant and Appellant.

APPEAL FROM:  District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDC 20-481
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Rufus I. Peace, Peace Law Group, LLC, Jacksonville, Florida

For Appellee:

Austin Knudsen, Montana Attorney General, Tammy K Plubell,
Assistant Attorney General, Helena, Montana

Kevin Downs, Lewis and Clark County Attorney, Helena, Montana

Submitted on Briefs:  August 13, 2025

Decided:  September 30, 2025

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Lucas James Richeson appeals from his November 29, 2022 convictions for felony attempted kidnapping, in violation of §§ 45-4-103 and 45-5-302, MCA, and misdemeanor assault, in violation of § 45-5-201(1)(a), MCA, entered in the First Judicial District Court, Lewis and Clark County, following a jury trial. We affirm.

¶3 On August 9, 2020, Richeson walked to the Great Northern Carousel in downtown Helena, Montana, and stood among bushes as he peered into the carousel building. Travis Hall noticed Richeson staring intently at him and his three-year-old son, T.H., as Hall was helping T.H. get seated on a carousel horse. A carousel employee instructed Hall to stand to the inside of the carousel horse rather than on the exterior of the platform for safety reasons. Soon after, Richeson entered the carousel through an employee-only doorway and walked briskly behind the cashier counter towards the carousel platform. Another carousel employee, Benjamin Terhune, told Richeson that he was not permitted in the employee-only area and then followed Richeson as he advanced toward Hall and T.H. Terhune caught up with Richeson and then imposed himself between Richeson and T.H. as Richeson attempted to remove T.H. from the carousel ride. A struggle between Richeson and Terhune and Hall ensued while Hall's wife removed T.H. from the ride and

2

away from the altercation. Richeson bit, headbutted, and pulled Terhune's hair as the two struggled. Eventually, Terhune and Hall were able to pin Richeson against a fence with a "bear hug" until the police arrived and placed Richeson under arrest.

¶4 Before trial, three mental health professionals provided evaluations of Richeson's mental state at or around the time of the offenses on appeal. On August 16, 2021, Dr. Bowman Smelko, a licensed psychologist, prepared a mental health evaluation report on Richeson in connection to a separate criminal proceeding resulting from unrelated offenses committed on July 29, 2020. Dr. Smelko diagnosed Richeson with substance-induced psychosis caused by his long-term abuse of methamphetamine but did not have a toxicology report from the date of the incident. Dr. Smelko opined that, despite Richeson's serious mental disease, he acted with knowledge and purpose during the July 29, 2020 offenses.

¶5 Richeson refused to participate in his second mental health evaluation. Dr. Scott Klajic, a clinical and forensic psychologist, therefore prepared the second report, dated February 11, 2022, based on collateral sources. Without personally examining Richeson, Dr. Klajic found nothing new to contradict Dr. Smelko's findings. Accordingly, Dr. Klajic likewise concluded that Richeson acted with purpose and knowledge during commission of the offenses. Dr. Klajic did find, however, that Richeson lacked the ability to assist in his defense, was unfit to proceed, and recommended that he be committed to the Montana State Hospital (MSH) for restoration of fitness. This conclusion resulted in Richeson being transported to MSH.

¶6     Dr. Laura Kirsch, a licensed clinical psychologist, and Dr. Daniel J. Bemporad, a psychiatrist, prepared a mental health evaluation of Richeson dated June 22, 2022. This third report noted that Richeson adjusted well to MSH, maintained a job, and was generally cooperative, earning the highest level of privileges for his unit. The report indicated that Richeson received a Structured Inventory of Malingered Symptomatology (SIMS) test, which detects whether a patient is feigning or exaggerating their mental health symptoms. Richeson received a score of 27, greatly exceeding the recommended threshold score of 14, suggesting a high probability of malingered symptoms. The report concluded that Richeson "had the capacity to act with knowledge and purpose during each of the alleged offenses."

¶7     At trial, Dr. Kirsch testified regarding her June 22, 2022 report. Dr. Kirsch's testimony described the earlier evaluations conducted by Dr. Smelko and Dr. Klajic, her observations leading to her conclusions, and the results of the SIMS test used to detect signs of Richeson exaggerating his symptoms. Specifically, Dr. Kirsch testified as to how some of Richeson's behaviors at MSH were not consistent with his reported delusions, such as eating despite a reported microchip implanted in his teeth and his sophisticated understanding of the criminal justice system.

¶8     Richeson testified at length to the events leading up to his arrival at the carousel as well as his delusional thinking that precipitated his offenses on August 9, 2020. Richeson recounted his belief that he was on an "alpha" team whose mission was to rescue kidnapped children and that he heard messages from agents of the Missouri River Drug Task Force who sent him to investigate whether there was any illegal activity taking place at the

4

carousel. Richeson's trial counsel did not introduce expert testimony to rebut Dr. Kirsch's testimony or corroborate Richeson's testimony.

¶9 In his closing statement, the state's prosecutor pointed out the lack of expert testimony to support Richeson's defense theory that he lacked the requisite mental state of purposely or knowingly when he committed the offenses on August 9, 2020. The prosecutor stated, *inter alia*, that: "The only testimony is as far as you can rely upon his mental state, is that the psychologist and at least the [mental health professionals at MSH]." Richeson's trial counsel did not object to this statement.

¶10 On August 24, 2023, the District Court sentenced Richeson to eight years imprisonment at Montana State Prison and six months at Lewis & Clark County Detention Center to run concurrently with each other and credited Richeson for time served pending sentencing. At Richeson's sentencing hearing, Dr. Smelko and Dr. Kirsch testified that they believed that Richeson acted with purpose and knowledge during the August 9, 2020 offenses. Dr. Smelko explained that there was "no difference, just difference in wording" between his report and those prepared by Dr. Klajic and Dr. Kirsch.

¶11 Richeson makes two arguments on appeal. First, he asserts that he was denied effective assistance of counsel because his trial counsel did not call an expert witness to support his defense theory that he lacked the requisite mental state of purposely or knowingly, thus depriving him of a fair trial. Second, Richeson contends that the prosecutor's closing statement prejudiced the jury by arguing that only the State's expert witness was reliable as to Richeson's mental state at the time of these offenses. We address each of these contentions in turn.

5

¶12    "Claims of ineffective assistance of counsel are mixed questions of law and fact." *State v. Jefferson*, 2003 MT 90, ¶ 42, 315 Mont. 146, 69 P.3d 641.  We therefore review claims of ineffective assistance of counsel de novo.  *Jefferson*, ¶ 42.

¶13    A criminal defendant's "right to effective counsel is guaranteed by the Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution."  *Jefferson*, ¶ 43.  A criminal defendant asserting a claim of ineffective counsel "bears the burden of proving that: 1) his counsel's representation fell below the objective standard of reasonableness; and 2) his counsel's failure was prejudicial." *Jefferson*, ¶ 43 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984); (citation omitted).  Both prongs of the *Strickland* test are necessary and a "[f]ailure to establish either prong is fatal to a claim of ineffective assistance of counsel." *State v. Kime*, 2013 MT 14, ¶ 31, 368 Mont. 261, 295 P.3d 580 (citation omitted).  This Court applies "a strong presumption that counsel's conduct falls within the wide range of reasonable professional conduct." *Jefferson*, ¶ 48 (citation omitted).

¶14    A direct appeal based on a claim of ineffective assistance of counsel (IAC) is appropriate "where the record reveals why counsel took, or failed to take, certain actions"; otherwise, a postconviction hearing is the proper forum for ineffective assistance claims where the record does not explain counsel's actions or omissions.  *State v. Schaeffer*, 2014 MT 47, ¶ 35, 374 Mont. 93, 321 P.3d 809 (citations omitted).  "Counsel's conduct must be reviewed in consideration of all the circumstances of the case." *Jefferson*, ¶ 48 (citation omitted).  "[T]his Court rarely grants relief if there is 'some evidence that the [attorney's] decision was strategic.'"  *Kime*, ¶ 21 (quoting *State v. Henderson*, 2004 MT 173 ¶ 5, 322

6

Mont. 69, 93 P.3d 1231). Defense counsel's "decision not to offer expert medical testimony may be a reasonable tactical choice." *Schaeffer*, ¶ 35 (citation omitted). In contrast, this Court has found "no plausible justification for the failure of defense counsel to offer" jury instructions that would have "directly refuted" the prosecution's argument. *State v. Chafee*, 2014 MT 226, ¶ 18, 376 Mont. 267, 332 P.3d 240; *see also State v. Kougl*, 2004 MT 243, ¶ 20, 323 Mont. 6, 97 P.3d 1095 ("[b]y failing to ask the court to tell the jurors that the law demands they view the accomplices' testimony with distrust, trial counsel failed to use the law to strike at the heart of the State's case").

¶15 Here, Richeson's trial counsel did not offer an expert witness regarding his mental state at the time of the offenses. The record is unclear whether such an expert had been retained or had prepared an evaluation. Given that three separate mental health experts came to the same conclusion as well as the absence from the record of any experts to controvert such a conclusion, it is plausible that Richeson's trial counsel made a reasonable tactical decision not to present compounding evidence of Richeson's mental state at the time of the offenses. Accordingly, Richeson's trial counsel's decision whether to call an expert witness is not based on the record. Thus, we conclude that Richeson's ineffective assistance of counsel claim cannot be reviewed on direct appeal and dismiss this claim without prejudice.

¶16 Next, we turn to Richeson's contention that the prosecution's closing remark that the jury could only rely on the State's expert as to Richeson's mental state impermissibly shifted the burden of proof from the State to the defendant. Since Richeson's trial counsel

did not object to the prosecutor's closing statement, Richeson urges this Court to exercise plain error review and hold that his trial was fundamentally unfair.

¶17 We consider applying plain error analysis where, as is the case here, counsel fails to object to a prosecutor's statements at trial. *State v. Lindberg*, 2008 MT 389, ¶¶ 31, 34, 347 Mont. 76, 196 P.3d 1252. Our plain error doctrine is applied "only where the defendant's constitutional rights are implicated and failure to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial proceedings, or may compromise the integrity of the judicial process." *Schaeffer*, ¶ 22 (quotation omitted). Reversal is the appropriate remedy when "a prosecutor's improper comments prejudice a defendant's right to a fair trial." *Lindberg*, ¶ 25 (quoting *State v. Sanchez*, 2008 MT 27, ¶ 51, 341 Mont. 240, 177 P.3d 444) (citation omitted).

¶18 We apply "a two-step analysis to determine whether improper comments have prejudiced a defendant's right to a fair trial. First, we determine whether the prosecutor made improper comments. Second, we determine whether those comments prejudiced the defendant's right to a fair trial." *Lindberg*, ¶ 25 (citations omitted). This Court "will not presume prejudice from the alleged misconduct, rather the defendant must show that the argument violated his substantial rights." *State v. Makarchuk*, 2009 MT 82, ¶ 24, 349 Mont. 507, 204 P.3d 1213 (citation omitted). Although a prosecutor may not comment on a defendant's decision not to testify, it is permissible for the prosecutor "to point out facts at issue which could have been controverted by persons other than the defendant, but were

not." *Makarchuk*, ¶ 24 (quoting *State v. Rodarte*, 2002 MT 317, ¶ 14, 313 Mont. 131, 60 P.3d 983) (citation omitted).

¶19    Here, the prosecutor spoke at length throughout his closing argument on the importance of following the jury instructions. The District Court's jury instructions correctly defined the law at issue and the State's burden of proof beyond a reasonable doubt. Like in *Makarchuk*, the prosecutor couched the alleged improper statement in the context of questioning the credibility of Richeson's testimony given its inconsistency with his prior statements, his goal-oriented behavior at MSH and the Lewis & Clark Detention Center, and his vivid recollection of the events leading up to his arrival at the carousel but failure to recall many specifics at the time of his offenses. The prosecutor here merely brought the jury's attention to Richeson's inability to marshal any evidentiary support, other than his own testimony, for his defense that a mental disease or defect impeded his capacity to form the necessary mental state. Our review of the entire trial transcripts and jury instructions convinces us that the prosecutor's statement, in context, did not shift the burden of proof from the State to the defendant. The prosecutor merely pointed out flaws in Richeson's defense theory. The State carried its burden of proof and the jury agreed.

¶20    In conclusion, we cannot ascertain from the record counsel's reasons for not calling an expert witness. Therefore, Richeson's IAC claim is dismissed without prejudice. Further, the entirety of the trial transcripts shows that the prosecutor's brief remark during closing arguments did not result in a manifest miscarriage of justice, unsettle the fundamental fairness of Richeson's trial, or compromise the integrity of the judicial process. *See State v. Schaeffer*, ¶ 22 (citation omitted).

¶21    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶22    Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M BIDEGARAY
/S/ INGRID GUSTAFSON
/S/ JIM RICE