FILED

06/06/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0361

DA 21-0361

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 105N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

MAUREEN THERESE DOUBEK,

      Defendant and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDC-2019-399
Honorable Christopher D. Abbott, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Nick K. Brooke, Stephens Brooke, P.C., Missoula, Montana

     For Appellee:

     Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

     Kevin Downs, Lewis and Clark County Attorney, John Nesbitt,
Deputy County Attorney, Helena, Montana

Submitted on Briefs:  May 3, 2023

Decided:  June 6, 2023

Filed:

                            Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Maureen Therese Doubek (Doubek) was convicted by a jury in the First Judicial District Court, Lewis and Clark County, of Accountability for Arson, under §§ 45-2-302(3) and 45-6-103(1)(b), MCA. Doubek appeals, arguing her Sixth Amendment right to effective assistance of counsel was violated by counsel's failure to offer a "mere presence" instruction.

¶3 In 2015, Doubek entered into a lease to own agreement with Michelle Wilson (Wilson) and Casey McCune (McCune) for the purchase of the Red Roof Café (the Café) and two residences located on the property. Wilson and McCune rented out one residence and lived in the other. In 2018, Doubek filed a civil complaint against Wilson and McCune for breach of contract when they fell behind on lease payments. Shortly thereafter, McCune left Montana, but Wilson continued to remain on the property.

¶4 In 2016, Doubek met Brad Richardson (Richardson), while he was doing mechanic work for Doubek. The two developed a "loose friendship." On July 30, 2018, Doubek approached Richardson about burning down the Café. Soon after, Doubek and Richardson met to discuss their arson plans at the American Legion. Makayla Masse (Masse),

2

Richardson's girlfriend at the time, was present during this discussion but did not participate. At the meeting, Richardson agreed to burn down the Café. Later that night, Richardson met Doubek at her apartment, where she handed him the keys to the Café. Richardson and Masse arrived at the Café around 2:00 a.m. Richardson called Doubek when he was parked across the street from the Café and informed her that "several people [were] moving around inside [the Café]." Doubek responded, "it wasn't a good idea" to burn down the Café. Richardson and Masse left. That same morning, Doubek messaged Richardson that she no longer wanted go "through with [his] offer" to burn down the Café.

¶5 Shortly after, Doubek and Richardson discussed Wilson and other unwanted tenants who continued to remain on the Red Roof property over Facebook Messenger. During this discussion, Richardson told Doubek he had "an army of crackheads," including Masse, that would "run [the Red Roof tenants] out." On August 10, 2018, Doubek tried to evict Wilson from the property by changing the locks. Four days later, Doubek had law enforcement serve a writ of possession on Wilson and evict her from the property. Wilson subsequently received an eviction judgment from the district court.

¶6 On August 16, 2018, Doubek reinstated her insurance policy on the property. Richardson inquired of Doubek: "Do you still want to get out from under [the Red Roof property]?" Doubek told Richardson that the property was being listed by a realtor that day. Richardson returned the keys to Doubek and sent her a message expressing interest in renting the trailer on the property. Doubek responded that Richardson could live rent-free in the trailer in exchange for working on and watching over the property.

3

¶7     On September 10, 2018, Doubek entered into a buy/sell agreement with Tom Cox (Cox) for the sale of the Red Roof property. However, Cox could not acquire financing before the closing date. After Cox's financing fell through, Doubek and Richardson agreed that Richardson would burn down the Café. Doubek told Richardson to "make sure you burn it to the ground." Doubek offered Richardson $15,000 to burn down the Café because she believed she had a million-dollar insurance policy. The two met at the Café and discussed their arson plans. Doubek did not give Richardson the keys but left the back door to the Café unlocked.

¶8     Richardson entered the Café through the unlocked back door and tried to start a fire near the water heater. However, Richardson's first attempt to burn down the Café was unsuccessful because it triggered the Café's fire suppression system. Consequently, Richardson returned to the trailer he resided in on the property, grabbed a mattress, and placed it behind the back door. Richardson's second attempt to burn down the Café was successful when he lit the mattress on fire and left the property. Richardson returned to the Café between 2:30 a.m. and 3:00 a.m. The fire department and law enforcement were present at the scene. Richardson informed Doubek the Café was on fire. Doubek went to the Café and reported to Richardson that the fire he started "was really good." She also disclosed to him she was mistaken about the amount of her insurance policy.

¶9     Richardson and Doubek did not discuss payment until Richardson messaged Doubek a Craig's List advertisement for an RV for $15,000 to remind her she owed him money. Doubek did not respond to his message. Richardson then inquired about the status

of Doubek's insurance reimbursement. She told him that her brother, John Doubek (John) was handling the insurance claim. Two weeks later, Richardson went to John's office. Richardson told John that Doubek had "burned down the Red Roof for insurance and she owed [him] some money." John refused to pay Richardson.

¶10 At the time of the fire, Masse was living in Washington but returned to Helena on October 30, 2018. Doubek and Masse messaged each other over Facebook when Masse returned. One month later, Doubek and Masse met in person. During this meeting, Masse signed a statement that had been typed and provided to her by Doubek. The statement reported that Richardson, while at the American Legion, had offered to burn down the Café for $14,000 and that Doubek declined Richardson's offer. The statement further provided that Doubek "didn't want to be part of any illegal activity . . . ." The statement also included Doubek's verbatim text declining Richardson's offer over Facebook on July 31, 2018. After Masse signed the statement, Doubek offered Masse employment at the R-B Drive-in, which Doubek also owned at the time.

¶11 Two weeks after Doubek and Masse met, Liberty Mutual Insurance issued Doubek three checks: one for $10,035.61; one for $123,215.34; and one for $65,116.66 to cover the remaining balance Doubek owed the previous owners of the Red Roof property.

¶12 When investigators determined the fire was intentionally set, the State charged Richardson with arson and Doubek with one count of Conspiracy to Commit Arson, a felony, in violation of §§ 45-4-102(1) and 45-6-103(1)(b), MCA, and, in the alternative, with one count of Accountability for Arson, a felony, in violation of §§ 45-2-302(3) and

5

45-6-103(1)(b), MCA. Richardson pled guilty to criminal mischief in exchange for truthful testimony at Doubek's trial regarding the Red Roof arson. Richardson testified that Doubek had directed him to burn down the Café although she was not present at the time of the offense.

¶13 In closing arguments, the State argued Doubek was accountable for the fire because she knew of Richardson's prior offer to burn down the Café, kept him near her business and on the property, and left the backdoor unlocked on the night he committed the offense. Doubek countered, in closing, that she did not participate in committing the arson; she expressly told Richardson not to burn down the Café; and her only involvement was that she allowed Richardson to remain in proximity of the Café.

¶14 During settlement of jury instructions, Doubek did not propose a jury instruction that mere presence at the scene or knowledge that a crime is being committed was insufficient to convict. A mere presence instruction would have provided: "Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish that the defendant was involved in the crime. To be responsible, you must find beyond reasonable doubt that the defendant was a participant and not merely a knowing spectator." *See e.g., State v. Kills on Top*, 243 Mont. 56, 92 n.1, 793 P.2d 1273, 1298 (1990).

¶15 The jury found Doubek not guilty of Conspiracy to Commit Arson, but guilty of Accountability for Arson. The District Court deferred imposition of Doubek's sentence

for six years, subject to conditions and restitution. Doubek appeals, claiming her counsel was ineffective for not offering a "mere presence" jury instruction.

¶16   Our review of ineffective assistance of counsel (IAC) claims is de novo because IAC claims constitute mixed questions of law and fact. *Deschon v. State*, 2008 MT 380, ¶ 16, 347 Mont. 30, 197 P.3d 476.

¶17   The Sixth and Fourteenth Amendments to the United States Constitution and Article II, Section 24 of the Montana Constitution, guarantee a defendant's right to the effective assistance of counsel. Nonetheless, before we reach the merits of Doubek's IAC claim, we first must determine whether her claim is properly before this Court. *State v. Savage*, 2011 MT 23, ¶ 23, 359 Mont. 207, 248 P.3d 308. Since IAC claims hinge on "whether counsel's conduct was based on the exercise of reasonable professional judgment," we must "inquire why counsel acted as alleged" by reviewing a developed record from the district court. *State v. Crider*, 2014 MT 139, ¶ 35, 375 Mont. 187, 328 P.3d 612. "Where ineffective assistance of counsel claims are based on facts of record in the underlying case, they must be raised in the direct appeal." *State v. White*, 2001 MT 149, ¶ 12, 306 Mont. 58, 30 P.3d 340. When an IAC claim is reviewable based on a well-developed record from the district court, we apply the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861.

¶18   Under some circumstances, it is not necessary to ask "why" counsel was deficient if there is "no plausible justification" for what defense counsel did. *State v. Kougl*, 2004

7

MT 243, ¶ 15, 323 Mont. 6, 97 P.3d 1095; *State v. Jefferson*, 2003 MT 90, ¶ 50, 315 Mont. 146, 69 P.3d 641. In such a rare instance, we will consider an IAC claim on appeal when there is no legitimate reason for what counsel did or did not do. *Kougl*, ¶ 15.

¶19 Here, Doubek did not submit or request a "mere presence" jury instruction in advance of trial. Likewise, the record does not show any discussion or reference to a "mere presence" instruction during trial. Because we cannot ascertain from the record "why" Doubek's counsel did not submit or offer a "mere presence" instruction, we cannot review her IAC claim on direct appeal.

¶20 This case is distinguishable from *State v. Chafee*, 2014 MT 226, 376 Mont. 267, 332 P.3d 240, upon which Doubek relies. In *Chafee*, the defense's theory of the case *was* that Chafee's mere appearance at the crime scene was insufficient to support a conviction. In contrast, Doubek's theory of her case was clear during closing argument—she expressly *withdrew* from the plan to burn down the Café—a theory which was supported by proposed Instruction 18 entitled "Accountability for the Conduct of Another—Withdrawal." Instruction 18 provided: "A person is not legally accountable for the conduct of another if before the commission of the offense, the person terminates his or her effort to promote or facilitate such commission and makes proper effort to prevent the commission of the offense." Thus, Doubek's theory of the case was not that mere presence is not enough to convict; rather, it was that she withdrew from the plan to burn down the Café. This case, therefore, does not present the rare circumstance where the record establishes there is no

8

plausible justification for counsel's conduct. *See Crider*, ¶ 35. Accordingly, we decline to consider Doubek's IAC claim on direct appeal.

¶21 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶22 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE